## 8140

### KELLY v. TINER.

INJUNCTION—GRAVEYARD.—Two persons who have relatives, ancestors and friends buried in a plot which has been used for a public cemetery for a number of years may maintain an action for themselves and the public to enjoin its desecration and the cultivation of the soil.

Before SHIPP, J., Darlington, April, 1911.    Reversed.

Action by Elias Kelly and Burrell J. Kelly against John Tiner. The complaint is:

"The plaintiffs, complaining of the defendant, allege:

1. "That the old 'Kelly Cemetery' is a plot of land in Darlington county, situated on the public road leading from Hartsville to Timmonsville, containing two (2) acres of land, and is bounded on the east by the said public road leading from Hartsville to Timmonsville and fronting thereon one acre; and is bounded on all other sides by lands of the defendant, John Tiner; and is now being used and has been used for many years as a public burying ground.

2. "That from plaintiff's best knowledge, information and belief, said knowledge, information and belief, having been obtained from the oldest inhabitants in the neighborhood, about eighty or ninety years ago; one Jacob Kelly, a large landowner of that neighborhood, set apart and gave to the public, the two acres of land hereinbefore described, as a public burying ground and from that time until now the said two acres of land thus set apart, given and dedicated to the public, by the said Jacob Kelly has been known as the 'Kelly Cemetery,' and has been used exclusively by the public all these years exclusively as a burying ground. That the said two acres, after having been given and dedicated to the public as aforesaid, and for the purposes aforesaid, was cut off and separated from the rest of the tract of land by rows of trees, the public at large taking possession of the same, and has ever since kept peaceable, continuous and uninterrupted possession of the same, caring for it, cleaning it off, keeping the graves in good condition, and putting a wire fence around the graves to keep the cattle from trampling upon and desecrating this sacred spot.

3. "That these plaintiffs are grandsons of the said Jacob Kelly, who originally set apart and gave the said two acres of land aforesaid for the purposes hereinbefore stated, and that these plaintiffs can remember for fifty years that the

said two acres known as aforesaid as the 'Kelly Cemetery' was then owned and possessed by the public as a place to bury the dead and no member of the Kelly family as heir at law of the said Jacob Kelly or any other person, prior to the acts of the defendant hereinafter stated, ever dreamed of laying claim to any part or parcel of the said two acres or did any. of them ever attempt for all these years to exercise any acts of ownership over the same except to bury their dead and aid and assist the public at large in keeping clean and in good order the said cemetery.

4. "That these plaintiffs are residents of that neighborhood and have been throughout almost their entire lives and from information received from the very oldest citizens of the community they are informed and believe that at the sale of the said lands of the said Jacob Kelly at the courthouse door in Darlington it was publicly stated that these two acres known as the 'Kelly Cemetery' was excepted, it being the property of the public and these plaintiffs have personally known all of the owners for the past fifty years of the tract of land* from which the said two acres was cut off nearly an hundred years ago, and at no time did either or any of them lay any claim to any part or parcel of the same, or exercise either publicly or privately any acts of ownership over the same except to bury their dead and aid and assist the public in preserving and keeping intact the said two acres of land for the exclusive and sole purpose of burying the dead and at all times did the owners of said original tract of land own and admit publicly and privately, that they did not own or possess any part or parcel of the 'Kelly Cemetery,' but that the same belonged to the public for the purpose of burying the dead.

5. "That these plaintiffs are the grandsons and heirs of the said Jacob Kelly, and are now and have been citizens of that community almost during their entire lives, that they, with the rest of the public, have had peaceable, open, notorious, hostile. continuous and uninterrupted possession of the said

two acres of land known as the 'Kelly Cemetery' as aforesaid for more than fifty years; that their parents, grandparents, and great-grandparents and other kindred, for nearly a hundred years have been buried in this cemetery, that each of these plaintiffs have children buried there, that they expect if the ruthless hand of its desecrator and detroyer, should be stayed, that this sacred spot shall be the burial place of these plaintiffs, their children, grandchildren, etc., on down through the corridors of time.

6. "That on the days of February, March, April and May of 1900, the defendant, John Tiner, unlawfully, wilfully, and wantonly burnt down the posts, holding the wires around the graves, cut down and destroyed most of the large trees, planted by hands long since dead and buried in the same graveyard, cut down and destroyed some of the grass, shrubbery, etc., on the said two acres, ploughed up into large beds a part of the land, and threatens to continue to commit the aforesaid depredations, and if he is not prohibited these plaintiffs verily believe that he will continue to thus illegally and unlawfully trespass upon this property, cut down and destroy the remainder of the old trees, the old landmarks as aforesaid, and will continue to destroy the shrubbery, mutilate the posts, and make the said two acres, the old 'Kelly Cemetery,' unfit for the purposes of burying the dead, the only use it has been dedicated to for these past eighty or ninety years.

7. "That if the defendant be allowed to continue his acts of trespass and depredations as aforesaid, these plaintiffs will be irreparably injured, and these plaintiffs verily believe from the defendant's past conduct, his threats, etc., that he does intend to continue his illegal, wilful, and wanton acts until the old graveyard is made a cotton patch or corn field.

8. "That these plaintiffs have no adequate remedy at law, and unless the Court restrains and enjoins the defendant from any further illegal, wilful and wanton trespasses and depredations, as aforesaid, these plaintiffs will be irremedial

and permanently injured and damaged and the aforesaid 'Kelly Cemetery' forever destroyed so that these plaintiffs and the community at large be deprived from burying their dead in the old family graveyard, and these plaintiffs desire that an injunction be issued, restraining and enjoining any further acts or trespass upon the aforesaid land known as the old 'Kelly Cemetery,' by the defendant, his agents and servants, or by any other party or parties, acting for him or by his authority.

"Wherefore, the plaintiffs pray judgment against the defendant, that the said defendant, his agents and servants and all persons acting under his authority and direction, be perpetually and permanently enjoined from entering upon or trespassing in any way upon the said two acres of land above described, and known as the old 'Kelly Cemetery,' and from mutilating, cutting down and destroying any of the posts, trees, shrubbery, etc., standing upon the said two acres of land, known as aforesaid as the old 'Kelly Cemetery;' and for the costs and disbursements of this action, and for such other and further relief as to the Court doth seem just and proper."

Grounds of demurrer:

It appears upon the face of said complaint that it does not state facts sufficient to constitute a cause of action, on the following grounds:

I. "Because there is no allegation that the alleged acts of the defendant constitute a nuisance.

II. "Because there is no allegation that the legal remedy of indictment has been exercised and found unavailing, indictment and not injunction being the proper mode of redress.

III. "Because there is no allegation of peculiar and special damage sustained by plaintiffs which would entitle them to injunction relief.

IV. "Because there is no allegation that the defendant is insolvent.

V. "Because there is utter failure to state facts constituting any equity."

Order sustaining demurrer:

"The issues of law arising upon the demurrer of the defendant to plaintiffs' complaint herein having come duly on for trial before me at the regular term of this Court on the 7th day of April, 1911, now, after hearing F. A. Miller, of counsel for defendant in support of the demurrer, and J. B. McLaughlin, plaintiffs' attorney, in opposition thereto, and due deliberation having been had thereon, I decide and find as follows:

"That said complaint does not state facts sufficient to constitute a cause of action because it appears upon the face of said complaint that there is no allegation of peculiar and special damage sustained by the plaintiffs which would entitle them to injunction relief.

"It is therefore ordered that the defendant have final judgment in his favor sustaining the demurrer to the complaint and dismissing said complaint with costs.

"It is further ordered that in the event of an appeal to the Supreme Court from this order the temporary injunction, heretofore granted by Judge Wilson, be continued pending said appeal, provided the plaintiffs execute a new injunction bond in the sum of two hundred dollars, in accordance with the usual form of injunction bonds, in favor of the defendant and that the said bond be filed within ten days with sufficient surety to be approved by the clerk of this Court."

Plaintiffs appeal on following exceptions:

1. "Because his Honor, Judge Shipp, erred in sustaining the demurrer, when he should have held that the complaint was sufficient and did state facts upon which injunctive relief should have been granted.

2. "Because his Honor, Judge Shipp, erred in holding 'that said complaint does not state facts sufficient to constitute a cause of action because it appears upon the face of said complaint that there is no allegation of peculiar and special damage sustained by the plaintiffs which would entitle them to injunctive relief.' He should have held that the complaint did state a good cause of action and that there was an allegation of such peculiar and special damages as would entitle the plaintiffs to the injunctive relief prayed for.

3. "Because his Honor, Judge Shipp, erred in holding after the following amendment was proposed: 'Elias Kelly and Burrell J. Kelly, as individuals, and as heirs at law of Jacob Kelly, deceased—and in behalf of the other heirs and Jacob Kelly, deceased, and in behalf of the public in general who have dead buried in the graveyard described in the complaint—Plffs.'

" 'I do not think that the amendment will do any good— you got the benefit of that when you made the motion to amend. I would grant the privilege of amending if it would keep this case in Court. I do not think it would.' When he should have held that if there were a defect of parties, that the amendment would have cured that defect and that these plaintiffs in their own behalf, and as heirs at law of Jacob Kelly, deceased, and in behalf of all those who have dead buried there, would be entitled to the injunctive relief asked for in the complaint."

*Mr. J. B. McLaughlin,* for appellants, cites: *The relatives may maintain such action:* 6 Cyc. 720-1, 723; 134 N. Y. 542; 53 Am. R. 613; 56 Am. R. 32; 112 Ga. 884; 53 A. R. 613; 13 Cyc. 268.

*Messrs, Miller & Lawson,* contra, cite: *Injunction does not lie where the remedy at law is adequate:* 81 S. C. 392; 44 S. C. 256; 41 L. R. A. 219; 66 L. A. R. 286; 52 L. R. A. 299; 80 S. C. 575; 1 Hill 365; 3 S. C. 438; 24 S. C. 39; 30

S. C. 545; 46 S. C. 327; 54 S. C. 242; 83 S. C. 292; 81 S. C. 370; 9 L. Ed. 1012. *Plaintiffs suffer no special or peculiar damage other than the public:* 54 S. C. 242; 46 S. C. 327; 83 S. C. 271. *These plaintiffs cannot maintain this action:* 24 S. C. 39; 78 S. C. 308; 64 S. C. 577; 65 S. C. 126; 17 S. C. 204.

March 20, 1912. The opinion of the Court was delivered by

MR. JUSTICE WATTS. This is a suit for permanent injunction. His Honor, Judge Shipp, sustained the demurrer to the complaint interposed by the defendants, and for a proper understanding of the case it will be necessary that the complaint, demurrer and order of Judge Shipp and the exceptions be reported with the case. He allowed an amendment to the complaint on motion of plaintiffs. The exceptions allege error in his decision. He based his order sustaining the demurrer on the ground, "the complaint did not state facts sufficient to constitute a cause of action, because it appears upon the face of the complaint that there is no allegation of peculiar and special damages sustained by the plaintiffs which would entitle them to injunctive relief." Did the complaint state a cause of action before the amendment and afterwards? We think so. The plaintiffs allege that they are grandsons and heirs at law of Jacob Kelly, and they allege that Jacob Kelly, during his lifetime, set apart and dedicated for the use of the public, two acres of land as a graveyard for the burial of the dead, and that it has been used as such for eighty or ninety years, and during all that time known as the "Kelly Cemetery," and during that time parties having dead buried there have kept up the graves by cleaning off the same and by fencing the same. That the right to use this property as a graveyard has never been questioned for over fifty years. That the plaintiffs, parents, grandparents, great-grandparents, and other kin-

dred, are buried there, and each of the plaintiffs have children buried there, and expect to be buried there themselves, and their descendants expect to be buried there.    That the defendant is trespassing upon and destroying the wire, shrubbery, trees, etc., and making it unfit for the purpose it was set apart and used for, and intends to continue his depradations until the graveyard is made a cotton patch.

We think the plaintiffs allege sufficiently peculiar and special damages to entitle them to injunction.    They allege they have kindred buried there, children, parents and other ancestors.    The allegations show they are interested in the graveyard as a whole and particularly in the plat where their dead lie.    I do not know of anything that would disturb and arouse the feelings of a properly constituted person more than the intentional trespass and violation of the graves of their dead.    It shocks and outrages the feelings, and arouses the indignation of every right minded person in a christian country, that the resting place of the dead should be interfered with, and the place set apart for this purpose converted into arable land, plowed over and cultivated and wiped out and obliterated as a cemetery.    I not only think when a graveyard is set apart for the use of the public that those who have kindred buried there can maintain a suit for any unlawful interferences and trespass; but I think any one who has friends buried there can interfere and allege peculiar and special damages.    These plaintiffs complain on behalf of themselves and on the behalf of the public in general, who have dead buried there.    Where it is impracticable to bring all the parties before the Court, by reason of numbers, one or more can complain on behalf of themselves and such others as may come in.

Judge Shipp based his decision on the principles laid down in *Steamboat Co.* v. *Railroad Co.,* 46 S. C. 327, 24 S. E. 337; 33 L. R. A. 541; *Threatt* v. *Mining Co.,* 49 S. C. 131, 26 S. E. 970; *Baltzeger* v. *Railway Co.,* 54 S. C. 242, 32 S. E. 358, and other cases affirming that principle.    An

4—91

examination of these authorities will show that where the
public generally sustains injury, that the party complaining
must show some special or peculiar damage to himself.    In
the case at bar the plaintiffs show this.    They complain that
their dead buried in a graveyard, set apart for that purpose
for over eighty years, are being disturbed and their rights
invaded by an unlawful attempt on the part of the defendant
to take possession of the land occupied by their dead, and to
tear down and eradicate all evidence of their resting place,
and to plant the land in crops.    Not only to disturb their
dead, but the dead of others buried in the same graveyard.
The very thought of the unlawful intermeddling with the
resting place of the dead is abhorent to the feelings of any-
one, and this, in my opinion, is sufficient to show special and
peculiar damages to the plaintiffs.    The law and christianity
devolves upon persons the duty to put away their dead, and
give them the right to protect the resting place of their dead
from the wanton and wilful depredations of strangers.    "If
one has been permitted to bury his dead in a cemetery by the
express or implied consent of those in proper control of it,
he acquires such possession in the spot of ground in which
the bodies are buried, as will entitle him to maintain an action
of trespass *quare clausum fregit*' against the owners of the
fee or strangers, who without his consent, negligently or
wantonly disturb it."    *Davidson* v. *Reed,* 53 American
Reports 613.    In the same case we find, "One who has
dedicated land to the public for burial purposes, the dedica-
tion having been accepted, may be prohibited from defacing
or meddling with the graves thereon, at the suit of anyone
having relatives or friends buried there."    In the case of
*Davidson* v. *Reed,* 56 American Reports 32, we find, "that
the public accepted and used the land for the purpose for
which it was designated by the owner is also beyond dispute.
It has been suggested that the bill cannot be maintained in
the name of the two complainants.    The complainants were
residents of the neighborhood; they had friends buried in

the burying ground, and were thus interested in preserving, for themselves and the public, the burying ground as it had been established, and we are of the opinion that they had the right to sue in behalf of themselves and others having a like interest.   The bill was brought, and, in our judgment, properly, for the protection of the rights of the people in that particular locality, and we perceive no reason why it may not be maintained in the names of a part for the benefit of all, as well as if all directly interested had joined in the bill."

In the case at bar the plaintiffs have a general interest as citizens of the community in which the cemetery is located, and have a special and peculiar interest because their parents, children and grandparents are buried there.   We think the Circuit Judge was clearly in error.

The other point involved here is decided in *Ex parte McColl,* 68 S. C. 489.

The judgment of the Circuit Court is reversed.