## 11577

### FROST v. COLUMBIA CLAY COMPANY *ET AL.*

#### (124 S. E., 767)

1. CEMETERIES—RULE AS TO "ABANDONMENT" STATED.—Change of place for burial of those who die or have died after a given time does not constitute "abandonment" of graveyard, but actual removal of remains to more suitable place is necessary.

2. CEMETERIES—RIGHT TO DAMAGES FOR INVASION OF BURIAL GROUND MAY BE ABANDONED.—The rule that a graveyard may not be abandoned except by the removal of the remains of the dead does not mean that one may not abandon his right to damages for the negligent or wilful invasion of the graveyard, as by leaving the ground uncared for.

3. CEMETERIES—DIRECTED VERDICT FOR PLAINTIFF IN ACTION FOR TRESPASS HELD PROPERLY REFUSED.—In action for damages against a clay

company and others, for trespassing on and excavating in a grave-yard which had formerly been the family burying ground of plaintiff's family, but had not been used for over twenty years, *held* that refusing to direct verdict for plaintiff was proper.

Before DeVore, J., Richland, October, 1923.    Reversed and remanded.

Action by W. H. Frost against Columbia Clay Co., and others.    Judgment for defendants on a directed verdict and plaintiff appeals.

The defendants claimed that plaintiff had abandoned the burial ground and left it uncared for for a period of more than 20 years preceding the commencement of such action, and during such time had asserted no claim in the property, and that defendants did not know that the land was a burial ground and discontinued excavating on discovery thereof. Witnesses for defendants testified that there was nothing to denote where burial ground was and that land had no characteristics of a cemetery.    Defendants' employees testified that they did not know that land was a graveyard, that they had received no notice thereof, and that on discovery of bones they had offered to assemble bones, level up yard, put fence around it and maintain it, and would not have made excavations if they had known that land was burial ground.

*Messrs. D. W. Robinson* and *D. W. Robinson, Jr.,* for appellant, cite: *Burial ground not subject to ordinary laws of property nor is it liable to be devoted to common uses:* 5 R. C. L., 246; L. R. A., 1918A, 142.    *Dedication of.burial grounds:* 3 L. R. A. (N. S.), 488; 42 L. R. A. (N. S.), 1138; 42 L. R. A. (N. S.), 1219; 106 S. E., 705; 68 S. C., 491; 7 L. Ed., 527.    *Rights of relatives and friends in burial ground:* 56 A. S. R., 30; 15 L. R. A. (N. S.), 797; 101 S. C., 130; 68 S. C., 491; 21 A. L. R., 640.    *Relatives may maintain trespass:* 99· Mass., 281; 91 S. C., 49; 21 A. L. R., 651; 75 A. S. R., 427.    *Damages for such tres-*

*pass:* 52 L. R. A., 624; 56 A. S. R., 30. *Abandonment of graveyard:* 9 Atl., 203; 1 Ato., 437; 15 Ann. Cas., 167; 27 L. R. A. (N. S.), 875; 69 S. W., 283; 170 N. Y. Supp., 187; 115 Atl., 523; 42 L. R. A. (N. S.), 1222; 56 A. S. R., 36; 11 C. J., 58; 10 L. R. A., 593.

*Messrs. Thomas & Lumpkin,* for respondent, cite: *Burial ground had been abandoned for more than twenty years:* 10 L. R. A., 598; 5 A. & E. Enc. L. 2nd Ed., 769; 5 R. C. L., 242; 68 S. C., 492; 5 A. & E. Enc. L. 2nd Ed., 596. *There can be no desecration of cemetery property when it is not known to be such:* 21 L. R. A., 629; 68 S. C., 493.

October 14, 1924.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The respondents make the following statement:

"As noted in the case for appeal, this was an action commenced in November, 1922, by the plaintiff against the defendants, for damages for the trespassing on and excavating in a graveyard which had formerly been the family burying ground of the plaintiff's family.

'The trial Court directed a verdict for the defendant on the ground that the alleged burial place had been abandoned.

"It is admitted that excavations were made in what had formerly been the burying ground of the Frost family, and that some bones were unearthed.

"In the motion for directed verdict for the defendant, a number of grounds were submitted, but the presiding Judge stated that there were only two grounds which he would consider; that is to say, the question of notice to the defendant company of the existence of a graveyard and the question of abandonment, and the other grounds were overruled, but in order to properly controvert the exceptions raised by the appellant it is necessary to bring to the atten-

tion of this Court the several grounds raised on the trial of the case by the respondents.

"The Court directed a verdict in favor of the defendant, on the primary ground that the alleged burial place had been abandoned. Using the words of the Court in commenting on the testimony of the plaintiff, Mr. Frost, the Judge says: 'The undisputed evidence of the plaintiff in this case, out of his own lips, is that that graveyard had not been used in over 20 years; and it was over 20 years ago since the last two people were buried in it. It has grown up in trees or shrubbery, and has been discontinued as a burial place, even for the family of the plaintiff.' "

The plaintiff moved for the direction of a verdict, leaving only the amount to the jury. The presiding Judge refused the motion of the plaintiff and directed a verdict for the defendant, as above stated. It is not necessary or proper to discuss the evidence, as this case must go back.

1. The first question is: Is there indisputable evidence that this family graveyard had been abandoned? There was not. While there is no case in this State directly in point, yet *Ex parte McCall,* 68 S. C., 492; 47 S. E., 974, throws some light on it.

"It is also true, as a general proposition, that where ground has been dedicated to the public for use as a cemetery, the owner cannot afterward resume possession or remove the bodies interred therein, although he has received no consideration for its use, and the interments were made merely by his consent. [Cases cited.] This doctrine is somewhat anomalous, and is not to be extended beyond the principle upon which it is founded. That principle is that the most refined and sacred sentiments of humanity cluster around the graves of departed loved ones, and that when these sentiments have become associated and connected with a particular spot of ground, by the invitation or consent of the owner, he shall not, for any secular purpose, disturb them."

The laws do, or should, set forth the sentiment of the people who are subject to them. This is particularly true under a government like ours. From the time of Abraham, the places where the dead were buried have been considered sacred and inviolate. All nations respect the graves of the dead. The graves of ancestors are a subject of idolatrous worship by the heathen. Our literature is full of references to the last or final resting place. In some of our church literature we find the statement that the bodies of our dead "do rest in their graves until the Resurrection." These burial places are sometimes called "God's Acre." The idea of perpetuity runs through nearly all references to the grave. Of course, as in nearly every other matter, there are exceptions. As was said in *Ex parte McCall,* sometimes the tenderest love requires the removal to more suitable surroundings.

The abondonment of a burying place is accomplished by the removal of the remains to a more suitable place. The change of the place for the burial of those who die, or have died after a given time does not constitute an abandonment of a graveyard, and his Honor was in error in so holding.

2. There was no error in refusing to direct a verdict for the plaintiff. While it is true that a graveyard may not be abandoned except by the removal of the remains of the dead that does not mean that a man may not abandon his rights to damages, for the negligent or wilful invasion of what should be a hallowed spot. The defendant pleaded estoppel and there was evidence upon which a verdict for estoppel might have been based. The injunction is not in issue. To this the respondent consented.

Besides this, the defendants claim that they did not know that there was a graveyard there, and, without fault of their own, they dug up the bones, and at once stopped

when they found out their mistake. These were matters for the jury.

The judgment is reversed, and a new trial ordered.

MESSRS. JUSTICES WATTS and MARION concur.

MR. JUSTICE COTHRAN (dissenting). I think that Judge DeVore was entirely right in directing a verdict for the defendants, and I therefore dissent from the conclusion announced to the contrary, in the opinion of MR. JUSTICE FRASER.

This is an action for $50,000 damages, and for a permanent injunction, against the defendants, on account of an alleged trespass committed by them, in excavating through a graveyard in which relatives of the plaintiff had been buried, by which the bones of the dead were disturbed and scattered.

The graveyard in question is located a few miles north of Columbia, on a part of the old Faust or Frost lands, at one time owned by Sarah Faust, who was the grandmother of the plaintiff, having married John D. Frost, his grandfather. Later it was owned by J. Frost Walker, and by him it was conveyed to F. H. Hyatt, who conveyed a part of it to the defendant, Columbia Clay Company. The area of the graveyard, by survey, is 100x150 feet, eliptical in form, and contains slightly less than one-third of an acre. The line between the defendant's land and the other part of the Frost lands divides the graveyard plot about equally. It had been established as a family graveyard many years ago, perhaps 100. Both of the plaintiff's grandparents were buried there, one of them in 1880, and the other many years before; a brother and sister were buried there about 45 years ago, also an infant daughter in May, 1901, and an uncle in July that year. The uncle was the last person to be buried there. Since that time, 1901, it appears to have been recognized by the older people simply as the place where the persons above named had been buried. During the time the land was owned by Hyatt, all of the trees in and around the graveyard were cut down, and the spot has long since

grown up in weeds, bramble, and blackberry bushes. Not a single member of the family is shown to have visited it in more than 20 years; not a rake, hoe, or axe has broken the "solemn stillness"; no fence has inclosed it; not a monument, or even a rude headstone, marks a single grave; the mounds even have long since disappeared, levelled with the ground, as if emphasizing the consignment of "dust to dust;" it has presented a picture of abject neglect; the silent sleepers have become, indeed, "to dumb forgetfulness a prey." It may appropriately have been called "God's Acre," for He alone had visited it and hidden with undergrowth the human shame of neglect.

> "Above the graves the blackberry hung,
>     In bloom and green its wreath,
> And harebells swung, as if they sung
>     The chimes of peace beneath."

The plaintiff himself could not locate a single grave and exhibited no interest until the alleged desecration occurred, when he called upon the negro gravediggers to assist him in locating the graves, which they could not do. He then gathered the scattered bones and skull of his relative together, with the remark, "These will be good evidence," and carried them home in preparation for the damage suit which quickly followed. His witness Elliott says:

"It looked like a waste piece of ground. I was there numbers of times shooting around it and playing around, and I didn't know it was a graveyard. * * * in fact, I have been there numbers of times before I knew it was a burying ground."

How it can be said that there is no indisputable evidence that the family graveyard has been abandoned is inconceivable to me.

In the summer and fall of 1922, the defendant, in order to lay a side track or spur track, made two excavations along the dividing line, and at both times exposed human

bones, some of which the plaintiff, as stated, took care of. The plaintiff himself testified that, as soon as Smith discovered that they had gotten into the cemetery with the excavation, he immediately ceased operations; tried in every way possible to take care of the plot of ground, by fencing it in and taking care of the bones that had been uncovered. It is for this excavation, under these circumstances, that the plaintiff asks $50,000 damages!

The plaintiff makes no claim of title to the land where the graveyard was located; that is unquestionably in the defendant company. His right to maintain an action for the desecration of the graves must therefore be derived from some other source; either from a deed by which the graveyard or his right to burial was established, or from a dedication of the plot by the owner, for the purposes of a graveyard. He makes no claim under a deed, but does claim that a dedication was effected by the acts and conduct of John D. Frost, the former owner.

I do not think that there can be any doubt as to the proposition that a burial ground may be so dedicated, either by express instrument, by adverse use, or by permission or license to so use the property. Nor do I entertain the slightest doubt that the former owner established here a family graveyard and dedicated the plot to that use.

A beneficiary, either under a deed or a dedication, establishing a certain plot of ground as a gravyeard acquires two distinct rights: 1. The right to bury his dead there; and, 2, the right to protect the graves of the buried dead from desecration. The rights, of necessity ·acquired from one ·or the other source, are coterminous with the source; they ·expire with its annihilation; if they come by deed, they may be destroyed by deed; if they come by either, they may be destroyed by abandonment.

The plaintiff does not insist upon the right to bury his dead in the old burying ground, and therefore this right need not be considered in the case; he is only interested in

the alleged breach of his right to demand that his buried dead be not disturbed.

The question in the case is whether or not the utter abandonment of the burial ground, by those for whose benefit it was dedicated, is an abandonment of the right to demand that the graves shall not be interfered with; in other words, whether or not this right is dependent upon the maintenance of the burial ground as such. It is declared, in the opinion of Mr. Justice Fraser:

"The abandonment of a burying place is accomplished by the removal of the remains to a more suitable place. * * * While it is true that a graveyard may not be abandoned except by the removal of the remains of the dead, etc."

With this proposition I do not agree. On the contrary, I am of opinion that all rights connected with it may be abandoned, as all other rights may be; and that, where the beneficiaries of the dedication of land for a graveyard have conducted themselves towards it as the plaintiff and his relatives have done in this case, the abandonment is complete, regardless of the matter of the removal of the bodies buried there.

The abandonment of a graveyard is not shown by the fact that no more burials may be accommodated within the space. The tender and commendable care for the resting place of the dead may be as clearly directed towards a cemetery that is fully occupied as towards one that is not so. So long as the space is maintained as a burial place, either with regard to those already buried or to those who may thereafter be buried there, it is holy ground and human instinct responds to this sentiment. Nor is the fact that interments which might be made there are no longer made conclusive of abandonment. Although the use of the graveyard for burials may have ceased, if it should be maintained and cared for out of respect for those already buried, it is none the less a cemetery and entitled to be treated as such.

"So long as a cemetery is kept and preserved as a resting place for the dead, with anything to indicate the existence of graves, or so long as it is known or recognized by the public as a cemetery, it is not abandoned. But where a cemetery has been so neglected as entirely to lose its identity as such, and is no longer known, recognized, and respected by the public as a cemetery, it may be said to be abandoned." 11 C. J., 58.

In 5 R. C. L., 242, it is said:

"On the other hand, it may contain the remains of the dead and yet be abandoned. If no interments have for a long time been made, and cannot be made, there, and in addition thereto the public and those interested in its use have failed to keep and preserve it as a resting place for the dead, and have permitted it to be thrown out to the commons, the graves to be worn away, gravestones and monuments to be destroyed (or, as in the case at bar, never to have been placed), and the graves to lose their identity, and, if it has been so treated and used, or neglected by the public as entirely to lose its identity as a graveyard, and is no longer known, recognized, and respected by the public and those interested in its use as a graveyard, then it has been abandoned."

In *Hunter v. Sandy Hill,* 6 Hill (N. Y.), 407, it is said:

"When these graves shall have worn away, when they who now weep over them shall have found kindred resting places for themselves, when nothing shall remain to distinguish this spot from the common earth around, and it shall be wholly unknown as a graveyard, it may be that some one who can establish a good 'paper title,' will have a right to its possession; for it will then have lost its identity as a burial ground, and, with that, all right founded on the dedication must necessarily become extinct."

In 5 A. & E. Enc. L., 797, it is said:

"Where land has been dedicated to cemetery purposes, and there has been a lawful and effectual abandonment of

the cemetery as such, the land will revert to the original owner."

In *Tracy v. Bittle,* 213 Mo., 302; 112 S. W., 45; 15 Ann. Cas., 167, it is said:

"In the latter class of cases [dedication], if there comes a time when the bodies are all removed, or when by other conditions a clear abandonment of the graveyard is made apparent, then the right of the public, which is somewhat in the nature of an easement, ceases, and the land reverts to the original owner or his grantees. By mere ceasing to make further interments does not abandon the graveyard, as we have seen, so long as it is kept in condition to be known, and is known, as a burying ground."

In *Campbell v. City of Kansas,* 102 Mo., 326; 13 S. W., 897; 10 L. R. A., 593, it is said:

"The use of a graveyard is twofold—for the purpose of continuous burials, and for the purpose of preserving the remains and memory of those who have been buried. The original uses can be continued only by the public continuing to bury, or by continuing to protect the remains already buried, and to preserve the identity and memory of the persons who have left them.    *  *  *    The public may cease to bury in the dedicated ground whenever it pleases. It may also refuse or neglect to either erect or preserve any monuments to indicate the identity of those already buried, or to give and continue to the place the character and name of a graveyard. When this happens, the original use terminates and the fee vests in the original donors or their legal representatives, free from it."

In *Trefry v. Younger,* 226 Mass., 5; 114 N. E., 1033, it is held that the interest of the owner of a burial lot is in the nature of an easement; it is not an absolute right in the property, but the right of burial, so long as the place continues to be used as a burial ground. It may have been added that it was also the right, so long as the place continues to be used as a burial ground, to prevent a distur-

bance of the bodies. Both rights spring from the same easement, and if the easement should be lost by abandonment both rights would necessarily perish with the destruction of the easement. In *Grinnan v. Lodge,* 118 Va., 588; 88 S. E., 79, Ann. Cas., 1918D, 729, it is said:

"The Courts are much divided as to the character of the estate one may have in a burial lot in a cemetery. It is certain that it is not a fee. The weight of authority is, and we think the better view, that it is a mere privilege or license to make interments in the lot exclusively of others as long as the burying ground or cemetery remains as such."

Coupled with this right, and referable to the same source, conveyance, or dedication, is the right to prevent the desecration of the graves of relatives. This right, as the other, can continue only as long as the plot remains as a cemetery and necessarily is lost by the loss of the dedication.

It is stated, in *Stewart v. Garrett,* 119 Ga., 386; 46 S. E., 427; 64 L. R. A., 99; 100 Am. St. Rep., 179, and in *Anderson v. Acheson,* 132 Iowa, 744; 110 N. W., 335; 9 L. R. A. (N. S.), 217, that the purchaser of a lot in a public cemetery, though under a deed absolute in form, does not take any title to the soil, but that he acquires only a privilege or license to make interments in the lot purchased, exclusive of others, so long as the ground remains a cemetery. The point was not at issue in these cases as to the right to prevent a desecration of the graves of those who had been buried under such privilege or license, but unquestionably it flowed from the privilege or license equally with the right of burial, and, upon logical grounds, would disappear long with a destruction of the privilege or license. In my opinion, the case of *Hines v. Tennessee,* 127 Tenn., 1; 140 S. W., 1058; 42 L. R. A. (N. S.), 1138, expresses the law clearly and correctly. The facts thus stated are in striking contrast with those of the case at bar:

"W. Crawford, more than 60 years ago, set apart about one acre of his farm, in one of the cultivated fields, as a family burial ground or cemetery, and it was so used by him during his life, several of his family being then and there buried, and when he died he was there buried. His descendants, since his death, have used it as a family burying ground, and many of them are there buried. Monuments and gravestones have been erected and maintained over several of the graves, and from time to time have been repaired, and the cemetery put in order and otherwise cared for."

A subsequent purchaser of the farm was indicted by the descendants of Crawford for desecrating the graves, under a statute. The defense was that he was not bound by the dedication and that the rights of the Crawfords were barred by the statute. The Court held that the purchaser took with notice of the dedication and was bound to respect it. As to the bar of the statute, the Court held:

"Nor is the right barred by the Statute of Limitations, so long as the lot is kept inclosed, or, if uninclosed, so long as the monuments and gravestones marking the graves are to be found there, or other attention is given to the graves, so as to show and perpetuate the sacred object and purpose to which the land has been devoted. No possession of the living is required in such cases, and there can be no actual ouster or adverse possession, to put in operation the Statute of Limitations, so long as the dead are there buried, their graves are marked, and any acts are done tending to preserve their memory and mark their last resting place."

"When a cemetery association or church sells particular lots in a cemetery, the purchaser becomes the owner of the soil, and manifestly his right to its possession protects interments made by him from disturbance." *Ex parte McCall,* 68 S. C., 489; 47 S. E., 974. *Vance v. Ferguson,* 101 S. C., 125; 85 S. E., 241.

If the right of a purchaser of a cemetery lot to protect interments made by him from disturbance, is derived from his ownership of the soil, certainly the same right in one who claims as the donee of a privilege or license must be derived from such privilege or license secured by the dedication.   If the dedication should fail, the right goes with its failure. . In *Kelly v. Tiner,* 91 S. E., 41; 74 S. E., 30, the Court, quoting from a case stated (*Davidson v. Reed,* 111 Ill., 167; 53 Am. Rep., 613), says:

"If one has been permitted to bury his dead in a cemetery by the express or implied consent of those in proper control of it, he acquires such possession in the spot of ground in which the bodies are buried, as will entitle him to maintain an action· of trespass *'quare clausum fregit'* against the owners of the fee or strangers who, without his consent, negligently or wantonly disturb it."

The "burial of the dead body in a cemetery lot is the only possession, when claimed and known, necessary to ultimately create complete ownership of the easement so as to render it inheritable; and as long as gravestones stand, marking the place as burial ground, the possession is actual, adverse, and notorious."   *Hook v. Joyce,* 94 Ky., 450; 22 S. W., 651; 21 L. R. A., 96.

"When one is permitted to bury his dead in a public cemetery, by the express or implied consent of those in proper control of it, he acquires such a possession in the spot of ground in which the bodies are buried as will entitle him to action against the owners of the fee or strangers, who, without his consent, negligently or wantonly disturb it.   This right of possession will continue as long as the cemetery continues to be used."   *Bessemer Co. v. Jenkins,* 111 Ala., 135; 18 South., 565; 56 Am. St. Rep., 26.

"When one buries his dead, therefore, in soil to which he has the freehold right, or to the possession of which he is entitled, it would seem there is no difficulty in his protecting their graves from insult or injury, by an action of tres-

pass against a wrongdoer. But bodies are most commonly interred in public cemeteries, where the parties whose duty it is to give them burial are not the owners of the soil by deed properly executed, and have no higher right than a mere easement or license. Of such it is held that they do so under a mere license, and their exclusive right to make such interments in a particular lot would be limited to the time during which the ground continued to be used for burial purposes; and, upon its ceasing to be so used, all they could claim would be that they should have due notice and an opportunity to remove the bodies to some other place of their own selection, if they so desire, or, on failure to do so, that the remains should be decently removed by others." *Bessemer Co. v. Jenkins,* 111 Ala., 135; 18 South., 565; 56 Am. St. Rep., 26.

"Such right of burial is not an absolute right of property, but a privilege or license, to be enjoyed so long as the place continues to be used as a burial ground." *Page v. Symonds,* 63 N. H., 17; 56 Am. Rep., 481.

"Where one is permitted to bury his dead in a public cemetery, by the express or implied consent of those in proper control of it, he acquires such a possession in the spot of ground in which the bodies are buried as will entitle him to action against the owners of the fee or strangers, who, without his consent, negligently or wantonly disturb it. His right of possession will continue as long as the cemetery continues to be used." *Bessemer Co. v. Jenkins,* 111 Ala., 135; 18 South., 565; 56 Am. St. Rep., 26.

It is held, in the case of *Ex parte McCall,* 68 S. C., 489; 47 S. E., 974, that in the case of a dedication, even when the cemetery has not been abandoned, circumstances may arise which will justify the owner of the land in requiring the removal of bodies; in other words, a revocation of the license. That which may be revoked certainly may be abandoned.

"Trespass *quare clausum fregit* cannot be sustained by the owner of property, not in possession, nor entitled to the pos-

session thereof, at the time of the alleged trespass." Note, 56 Am. St. Rep., 37.

If, therefore, at the time of the alleged trespass, the graveyard had been abandoned, the plaintiff's right of possession under the privilege or license, either to burial in that space or to protect the bodies already there, had come to an end and his right to maintain trespass no longer existed.

In *Badeaux v. Ryerson,* 213 Mich., 642; 182 N. W., 22, it is held (quoting syllabus) :

"A common-law dedication does not pass the fee, but only an easement, and where land is conveyed subject to easement in public to use land as a cemetery, the possession and beneficial use of the land, on public's abandonment of cemetery, reverts to grantee."

"Right of burial in a cemetery is not absolute right of property but merely a privilege  *  *  *  to be enjoyed so long as the place continues to be used as a burial ground." *Brown v. Hill,* 284 Ill., 286; 119 N. E., 977.

"Where land is dedicated for a burying ground, whether by a common-law dedication, under which the fee remains in the owner, or pursuant to Acts Ohio  *  *  *  abandonment of the land as a burying ground restores the former owner to his right of possession." *Mahoning v. Young,* 59 Fed., 96; 8 C. C. A., 27.

For these reasons, it appears perfectly clear to me that, as the graveyard has for years been abandoned by those interested in its preservation as such, the dedication is extinguished, and the only rights which the plaintiff ever enjoyed, the right to bury his dead and the right to recover damages for the desecration of the graves, were lost to him by the abandonment of the dedication, the source of his rights while they existed.