698 S.E.2d 591

**The HUXFIELD CEMETERY ASSOCIATION, Appellant,**

**v.**

**Bobby L. ELLIOTT, Betty Sue McAllister, Charles C. Elliott, Buckie W. Elliott, Mary Lee E. Phillips and Larry Allen Elliott, Respondents.**

No. 26866.

Supreme Court of South Carolina.

Heard May 27, 2010.

Decided Aug. 16, 2010.

Rehearing Denied Sept. 22, 2010.

W.E. Jenkinson, III, and M. Amanda Harrelson Shuler, both of Jenkinson, Jarrett and Kellahan, of Kingstree, for Appellant.

Robert J. Moran, of Murrells Inlet, for Respondents.

Justice KITTREDGE.

This case concerns a three-acre tract of land known as Huxfield Cemetery and which party, Appellant or Respondents, may maintain control over the property. The special referee treated this dispute as an action to try title and ruled that because Respondents had superior title over Appellant, Respondents were entitled to maintain control over the cemetery and were permitted to charge a burial fee. We reverse the special referee's order and hold Appellant has the right to maintain and control Huxfield Cemetery.

## I.

In 1881, William Rowe conveyed a 500 acre tract of land to Samuel Wall by deed, excepting out "three acres near Carvers Bay Known as the Huxfield Graveyard to be used as a Public

Burying Ground." From 1881 through 1999, Mount Zion Church managed and maintained the land and used it, without challenge, as a cemetery for its members. In 1999, at the request of the pastor for Mount Zion, who no longer wished to maintain separate accounts, an association of relatives and descendants of those buried in the cemetery assumed responsibility for collecting and accounting for donations made towards Huxfield Cemetery.

In March 2006, Respondent Bobby L. Elliott sent a letter to local funeral homes stating that as the heirs of R.L. Elliott, they were the owners of Huxfield Cemetery and would begin charging $500 per burial plot. In response, the association of relatives formally incorporated as Appellant Huxfield Cemetery Association for the purpose of preserving Huxfield Cemetery as a public burial ground. Appellant filed its articles of incorporation with the Secretary of State and designated Baylis E. Elliott as its registered agent and president.[1] Mount Zion issued a quit claim deed to Appellant transferring any property rights it had in Huxfield Cemetery. In 2007, Appellant filed a declaratory judgment action seeking an order declaring the rights of the parties with respect to Huxfield Cemetery.

At trial, Appellant presented Renee Dean, a real estate paralegal, as an expert in the field of title examination and abstract preparation to testify as to the chain of title. Dean testified that William Rowe transferred the deed conveying 500 acres, but carving out the three acre tract for Huxfield Cemetery, to Samuel Wall; Wall transferred the property to Thomas Cribb; Cribb transferred the property to W.F. Elliott; W.F. Elliott died intestate, and in 1893, the land was partitioned. Jacob Elliott obtained title to a portion of the partitioned tract that surrounds Huxfield Cemetery.

In 1944, Jacob Elliott conveyed the property to Susan Elliott. The next filing found with regard to this property was a "1956 map of 148 acres surveyed for the Estate of Susan Elliott."[2] Following Susan Elliott's death, her heirs brought

---

1. Baylis Elliott is related to Respondents. It appears a rift developed between members of the Elliott family, which ultimately led to this litigation.

2. Huxfield Cemetery is identified on this map, but shown as a separate parcel.

a partition suit in which a 1961 map was filed. The 1961 map divided Susan Elliott's property into four tracts. Huxfield Cemetery is shown as a separate parcel, but Tract One surrounds it. Tract One was conveyed to R.L. Elliott. In 1978, a plat was recorded stating it was a "map of 2.25 acres of land in tax district no. 3 on which a cemetery is located—owned by R.L. Elliott." In 1995, R.L. Elliott issued a deed of distribution to Mary C. Elliott and Respondents conveying certain property including "The tract shown as CEMETERY on that" 1961 map. Mount Zion is not mentioned or referenced in the chain of title.

In addition to Dean's testimony, Appellant called Cyrus Snowden, who testified his mother served as the secretary/treasurer of Mount Zion. Snowden presented checks from 1964 and 1973 reflecting funds from Mount Zion's account that were used to maintain Huxfield Cemetery. Baylis Elliott testified he helped clean the cemetery from the time he was a child and was reimbursed by Mount Zion for his efforts. On cross-examination, Baylis admitted he, on behalf of Mount Zion, retained a lawyer in 1990 when they learned R.L. Elliott claimed he owned the property. The lawyer sent a letter to R.L. Elliott, in which the lawyer stated he was aware R.L. Elliott obtained title to Huxfield Cemetery following the partition suit of Susan Elliott's estate and requested a quit claim deed to Huxfield Cemetery. Baylis also admitted requesting Respondents' permission to erect a marker honoring Confederate veterans.

Although Respondents did not present any witnesses or introduce any evidence, the special referee ruled in their favor. The special referee first found this was an action to try title and that Huxfield Cemetery was a public burial ground. He found several statutes of limitations provided Respondents a defense to Appellant's claim including S.C.Code Ann. §§ 15-3-340, 350, 380 and 15-67-210, 220. The special referee found that because Respondents had established possession of the land under color of title, the burden shifted to Appellant to prove a claim to title, which Appellant failed to prove. *See Cummings v. Varn*, 307 S.C. 37, 41, 413 S.E.2d 829, 832 (1992) (holding the defendant in actual possession is regarded as the rightful owner until plaintiff proves perfect title and the plaintiff must recover on strength of his title, not the weak-

ness of the defendant's title). Accordingly, the special referee ruled "Huxfield Cemetery is a public burial ground and shall remain so in perpetuity" and that Respondents were entitled to maintain control of Huxfield Cemetery and charge a burial fee.

## II.

In our view, the special referee's order is based on an error of law. We begin with the parties' steadfast stipulation, which forms the basis for this litigation: the property was dedicated to the public in 1881 to be used as a public burying ground and the property may not (and will not) be used for any other purposes. Because this land is a cemetery, traditional property laws are not applicable. *See* 14 Am.Jur.2d *Cemeteries* § 2 ("A cemetery is not subject to the laws of ordinary property."). Thus, an overview of property laws governing cemeteries is instructive.

Land may be dedicated to the public for cemetery purposes and no particular form or ceremony is required to accomplish such a dedication. 14 Am.Jur.2d *Cemeteries* § 17. "The intention of the owner of the land to dedicate it for a public cemetery, together with the acceptance and use of the same by the public, or the consent and acquiescence of the owner in the long-continued use of his or her lands for such purpose, are sufficient." *Id.* This principle of law on public cemetery dedications mirrors our case law on all types of public dedications. *See Tupper v. Dorchester County*, 326 S.C. 318, 487 S.E.2d 187 (1997) (holding in order to effectuate a public dedication, the owner must express in a positive and unmistakable manner the intention to dedicate his property to public use and there must be acceptance of such property by the public).

A public dedication will either be a statutory dedication or a common-law dedication. A statutory dedication is a dedication made in conformity with statutes providing for the dedication of lands to the public. 26 C.J.S. *Dedication* § 3. A statutory dedication operates as a grant and results in a conveyance of title to the grantee. 23 Am.Jur.2d *Dedication* § 53. On the other hand, a common law dedication is the setting apart of lands for public use; it rests on public

convenience and is based on public policy and good faith. 26 C.J.S. *Dedication* § 2. A common-law dedication does not pass the fee, but only an easement. *Frost v. Columbia Clay Co.,* 130 S.C. 72, 124 S.E. 767 (1924). That is, the public gets only an easement with the fee left in the dedicator. *Boyd v. Hyatt,* 294 S.C. 360, 367, 364 S.E.2d 478, 482 (Ct.App.1988). As it applies to cemeteries, "[a] common-law dedication of land for a cemetery does not result in the extinguishment of the dedicator's title; the fee remains in him or her with a possibility of reverter on the abandonment of the cemetery...." 14 Am. Jur.2d *Cemeteries* § 17.

Although our jurisprudence is far from replete with cases concerning cemeteries, we have recognized that traditional property law principles do not apply to cemeteries. In *Kelly v. Tiner,* 91 S.C. 41, 74 S.E. 30 (1912), the trial court found the plaintiffs, whose family members were buried in a cemetery on the defendant's property, could not maintain an action against the defendant. This Court reversed and recognized the principle that a landowner holding fee title to the land does not have exclusive rights to use his land in any manner he desires: "One who has dedicated land to the public for burial purposes, the dedication having been accepted, may be prohibited from defacing or meddling with the graves thereon, at the suit of anyone having relatives or friends buried there." *Id.* at 50, 74 S.E. at 33 (citing *Davidson v. Reed,* 111 Ill. 167 (1884)). Also in *Frost v. Columbia Clay Co.,* the Court acknowledged "as a general proposition, where ground has been dedicated to the public for use as a cemetery, the owner cannot afterward resume possession or remove the bodies interred therein, although he has received no consideration for its use, and the interments were made merely by his consent." 130 S.C. at 75, 124 S.E. at 768 (quoting *Ex parte McCall in re Little v. Presbyterian Church of Florence,* 68 S.C. 489, 492, 47 S.E. 974, 974 (1904)).

### III.

This review of principles of law governing public cemeteries reveals that merely because an individual holds fee title to property, he does not have the exclusive right to control the land. For the reasons reflected above, the public, and specifically the heirs and descendants of the people buried

on the property, have substantive rights in Huxfield Cemetery. "Whether the right of an heir to visit a cemetery is considered an easement, a license, or a privilege, it cannot be extinguished by a subservient fee owner through a conveyance to another." 14 Am.Jur.2d *Cemeteries* § 38. Furthermore, this right "is a real right, not a servitude or usufruct, but an implied contractual relationship that binds the owner irrevocably." *Faust v. Mitchell Energy Corp.*, 437 So.2d 339, 342 (La.App.1983). For these reasons, we hold the special referee erred in treating this matter as an action to try title and ruling in Respondents' favor merely because he found they had superior property rights in the land.

As stated above, Appellant has an easement interest in Huxfield Cemetery. The determination of the extent of a grant of an easement is an action in equity, and as such, a court may take its own view of the evidence. *Tupper*, 326 S.C. at 323, 487 S.E.2d at 190. Moreover, a court's equity powers are properly used in order to protect the rights of those owning lots in or having relatives buried in a cemetery. 14 Am.Jur.2d *Cemeteries* § 47. We make no ruling as to title or whether Respondents hold superior title. Even assuming Appellant does not hold fee title and assuming Respondents do, the parties have stipulated to the facts necessary for us to make a determination as to which party is entitled to maintain and control Huxfield Cemetery. Specifically, the parties agree that the property was dedicated as a public cemetery in 1881, that Mount Zion, and subsequently Appellant, assumed responsibility for Huxfield Cemetery from 1881 through 2006, and that Appellant is composed of relatives of those buried in Huxfield Cemetery.

We have found no South Carolina case on point,[3] however two cases from Alabama and Florida provide some guidance. In *Ebenezer Baptist Church, Inc. v. White*, 513 So.2d 1011 (Ala.1987), Ebenezer Church acquired title in 1909 to land on

---

**3.** Although *Kelly v. Tiner* and *Frost v. Columbia Clay Co.* offer guidance, they are not on point. In *Kelly* and *Frost*, the plaintiffs alleged the defendants were desecrating gravesites, while the defendants asserted the cemeteries had been abandoned. In this case, however, the parties are disputing the right to control the cemetery. Respondents agree the property must be used as a cemetery and there is absolutely no allegation Respondents have caused damage to any gravesite.

which a cemetery was located. For years, family members of persons buried in the cemetery had assumed the duties of caring for the property. In 1984, Ebenezer Church attempted to take responsibility for the cemetery by clearing brush and announcing its intent to charge a burial fee. The circuit court granted the family members' request for an injunction and prohibited the church from charging a burial fee and altering the gravesites. In affirming the injunction, the Alabama Supreme Court noted, "Ebenezer Baptist Church has permitted and acquiesced in an indiscriminate use of the cemetery over the years. The church has never established rules and regulations regarding the use of monuments, mounds, or footstones and has never charged a burial fee." *Id.* at 1014.

Similarly, in *Mingledorff v. Crum,* 388 So.2d 632 (Fla.App. 1980), family members of persons buried in a cemetery on the defendant's property brought suit against the defendant asking the court "to declare a right . . . to enclose and properly maintain the area and to have access" to the cemetery. The court reviewed the applicable property law regarding cemeteries and observed "[t]hese authorities and equitable principles, together with a recognition of the concern and sentiments of surviving descendents . . . dictate that the law observe and protect the rights of those survivors." *Id.* at 636. Accordingly, the court held that the family members had a right to maintain the cemetery. Importantly, however, the court also held "[c]oupled with these rights is a continual obligation to actually maintain the area and . . . otherwise abate any conditions which render any part of the area unhealthy or offensive to the senses." *Id.*

We find these cases persuasive and on point with the facts of this case. We hold Appellant is the proper party to maintain control over Huxfield Cemetery. Appellant and Mount Zion, Appellant's predecessor, have served as the caretaker for Huxfield Cemetery since 1881 without interruption or incident. The record reflects that Mount Zion took it upon itself to collect funds to maintain and preserve the cemetery from the initial dedication. No burial fee has ever been assessed against individuals wishing to bury their family members in Huxfield Cemetery. Respondents never attempted to assert any rights or regulate this cemetery in any way whatsoever until 2006 when they sent out notices declaring that a

$500 per plot burial fee would now be assessed.[4]  Further-more, Appellant is a legitimate non-profit association formed for the exclusive purpose of preserving and maintaining Hux-field Cemetery and has filed the requisite documents with the Secretary of State establishing it as such.  As a final matter, we follow the *Mingledorff* court's approach and hold that along with the right to control and maintain the property, Appellant also has a duty and responsibility to properly pre-serve and maintain Huxfield Cemetery.

REVERSED.

TOAL, C.J., PLEICONES, BEATTY, and HEARN, JJ., concur.

---

**4.** Although there was some reference made indicating Respondents attempted to pay taxes on the property beginning in 1995, we give this little weight and view it as an attempt to posture for this litigation.