## Wytheville.

ROANOKE CEMETERY COMPANY v. GOODWIN AND OTHERS.

June 18, 1903.

1. CEMETERY COMPANIES—*Rules and Regulations.*—A private cemetery company has authority, by the general law, to make reasonable rules and regulations for the management of its affairs and the disposition of its property.

2. CEMETERY COMPANIES—*Lot Owner—Character of Title—How Title Acquired.*—A purchaser of a lot from a private incorporated cemetery company acquires no absolute interest in or dominion over such lot, but merely a qualified or usufructuary right for the purposes to which the lots are devoted, and for which they are set apart by the company. The holding is in the nature of an easement, with the exclusive right to bury on the lot, subject to the general proprietorship and control of the company in whom the legal title is lodged. All purchasers from such companies are affected with notice of the limitations placed upon their holdings by the law of the land, and the charter, constitution, and by-laws of the company made in pursuance thereof. No formal deed is necessary to confer this exclusive right for burial purposes on the purchaser, and, if a deed in fee simple be made to a purchaser, he only acquires the right or privilege of using the lot for the purposes to which it is dedicated.

3. CEMETERY COMPANIES—*Rules and Regulations—Effect on Purchasers—Case in Judgment.*—A private cemetery company may make rules and regulations for the conduct of its affairs, not in conflict with its charter or the general law, and which are reasonable and equal in their operation, and uniform in their application to all owners of lots in the cemetery. In the case in judgment, the purchasers of lots had both actual and constructive notice of the regulation of the company fixing the "grave fees" to be paid the superintendent of the cemetery, no matter by whom a grave was dug, and, the regulation being reasonable, the purchasers must hold their lots subject to and in conformity with such regulation.

4. CORPORATIONS—*Discretionary Powers—Supervision by Courts.*—Courts of equity cannot substitute their own business discretion and judgment for that of a company on matters intrusted to the company by its charter.  Their visitorial powers have no such scope.

5. CEMETERY COMPANIES—*Grave Fees—Monopoly—Restraint of Trade.*— A private cemetery company may fix the rate of "grave fees" to be charged by its surperintendent, and give him a monopoly of such fees.  The law against restraints of trade has no application to a private cemetery company conducting its affairs in its own way, and by agents of its own selection for the *bona fide* purpose of effectuating the objects for which the company was organized.

Appeal from a decree of the Circuit Court of Roanoke county, pronounced October 10, 1902, in a suit in chancery, wherein the appellant was the complainant, and the appellees were the defendants.

*Reversed.*

The opinion states the case.

*A. A. Phlegar* and *W. W. Moffett,* for the appellant.

*R. C. Stearnes,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

The Roanoke Cemetery Company was incorporated at August term, 1869, of the Circuit Court of Roanoke county, and invested with all general powers, and subject to all general restrictions, then in force or which might thereafter be enacted by the General Assembly of Virginia, for the operation and control of cemetery companies.

Article 14 of its constitution provides: "That the Board of Directors shall appoint a superintendent whose duties and emoluments shall be prescribed by the board."

On August 15, 1875, a regulation was adopted that "The superintendent shall furnish a certificate of selection to each person selecting a lot, which shall be presented to the treasurer, whose duty it shall be to require the party named in such cer-

tificate to comply with the terms of sale prescribed by the Board of Directors, and after indorsing said certificate of selection, to refer the same to the superintendent. This action shall entitle the said party to own and occupy the lot specified, but only upon the terms and conditions prescribed by the company."

A resolution was adopted June 21, 1889, by which it is made the duty of the superintendent to dig the graves, have them filled after interment, and remove all dirt from the lots, for which service he is to be paid by the owner of the lot on which the grave is dug a fee of $3 for the grave of a child, and $4 for the grave of an adult, which charges are denominated "grave fees," and constitute the compensation of the superintendent for all services rendered the company.

By a general revision of the regulations and by-laws of the company, in May, 1896, the duties of the superintendent in respect to digging graves are somewhat increased, his fee for graves of adults is fixed at $5, and it is provided that he shall be entitled to the "grave fees," no matter by whom the work might be done.

On December 27, 1894, the Messrs. Bowles selected and paid for a lot in the cemetery, and obtained a receipt in full therefor from the treasurer, but no other certificate of purchase was given them.

By Acts 1875-'76, p. 38, c. 47, cemetery associations are authorized to appoint superintendents, with the exclusive right to direct the opening of graves, and, by section 1412 of the Code of 1887, the trustees and their successors are empowered to "make such rules and regulations as they may deem proper for the burial of the dead, . . . the sale of lots," etc.; and, independently of these statutory enactments, the company, by the general law, has authority to make reasonable rules and regulations for the management of its affairs and disposition of its property.

At the date of the purchase of the lot in question, the purchasers knew, as a matter of law, that the company had power to make such rules and regulations; and they also knew, as a matter of fact, of the existence of the regulation of which they now complain. That fact is practically admitted by their answer to the bill; and, two days before the lot was paid for, Joseph R. Bowles paid a "grave fee" to the superintendent for the burial of his child.

In the latter part of the year 1900, the Messrs. Bowles undertook to have a grave opened upon their lot, by appellee Goodwin, for the burial of a child, over the objection of the company and in violation to its rules. Whereupon appellant obtained an injunction from the Circuit Court of Roanoke county, enjoining the opening of that particular grave, and also enjoining appellee Goodwin, an undertaker, from opening any other graves in future in the cemetery inclosure, except in accordance with its rules, regulations, and by-laws.

Appellees insist that the rules and regulations of the company in respect to opening graves are unreasonable and unjust, and tend to create a monopoly of the undertaker's business in favor of the superintendent; and also that the fees allowed for his services are excessive.

Evidence was taken to show that Goodwin opened the grave referred to at the instance of the Messrs. Bowles, without the consent of the superintendent or the company, and that payment of the grave fee to the superintendent was refused.

The financial condition of the company was shown, and also the cost of opening, filling, and packing graves and removing the dirt. While the actual cost of that work is proved to be considerably less than the grave fees allowed by the rules of that company, it is shown that the fees are as low or lower than other companies charge for similar services, and that it is customary for cemetery companies to charge such fees.

Goodwin is neither a stockholder nor lot-owner in the ceme-

tery, and bases his contention solely on the ground that the rule of the company is an unjust discrimination against him as an undertaker.

At the hearing the court decreed:

(1) That the terms of burial in the lots of the cemetery should be reasonable and necessary for the purpose for which the said company was organized.

(2) That while it was and is necessary that the company should have a competent superintendent to see that graves are properly dug, especially as to depth, and the grounds kept in an orderly and sightly condition, for which services a proper salary should be paid to said officer, yet the said salary should be paid out of the general funds of the company, especially of a company in the good financial condition of this one.

(3) That under such supervision the rules of the said company should provide for the opening of graves, and other duties pertaining to interments, by others than the agents of said company, and particularly by competent and regular undertakers, without discriminations or preferences, either direct or indirect. Provided, if said graves are opened, tamped, and the surplus earth removed, either by the agent of the company or by a lot owner or his agent, the trustees shall have the right to require a reasonable deposit to be made with its treasury before the grave is opened, which deposit shall be sufficient to save the company from expense, and which shall be returned to the lot owner in case he or his agents perform the said services in a proper manner, under the supervision of the superintendent.

(4) That where such services of opening graves, refilling them, etc., are performed by the superintendent or other agent of the company, any charge beyond actual cost is unreasonable and unnecessary.

(5) That the grave fee of $5 sought to be charged in this case was unreasonable and unnecessary.

The injunction was dissolved and the bill dismissed, and the parties required to pay their respective costs. From that decree this appeal was allowed.

Appellees assign as cross-error the failure of the court to sustain their contention that Peter S. and Joseph R. Bowles purchased the lot in controversy without reservations or exceptions, and that they are the absolute owners thereof in fee simple.

The theory of the defence, so far as those appellees are concerned, is founded upon a misconception of the property rights of lot owners in a private incorporated cemetery.

The purchaser of a lot from such an association holds it by a peculiar title. He acquires no absolute interest in or dominion over such lot, but merely a qualified and usufructuary right for the purposes to which the lots are devoted and for which they are set apart by the company. Their holding is in the nature of an easement, with the exclusive right to bury in the lots, subject to the general proprietorship and control of the association, in whom the legal title is lodged. All purchasers from such companies are affected with notice of the limitations placed upon their holdings by the law of the land, and the charter, constitution, and by-laws of the company made in pursuance thereof. Taylor on Private Corp., sec. 195.

It is settled law that a formal deed is not essential to confer the exclusive right to the use of a lot in a cemetery on the purchaser for burial purposes; and, on the other hand, if the lot be conveyed by deed absolute in form, such purchaser only acquires the right or privilege of using the lot for the purpose to which it is dedicated. *Gardner* v. *Swan Point Cem.* (R. I.), 40 Atl. 871, 78 Am. St. Rep. 898.

It is apparent from the foregoing statement of the law applicable to the facts of this case, that the decree complained of is erroneous and cannot be sustained. The rules and regulations assailed by appellees are neither in conflict with the char-

ter, nor the statutes applicable to such companies.. They are reasonable, and equal in their operation, and uniform in their application to all owners of lots in the cemetery, and are, therefore, valid.   3 Clark & Marshall on Private Corp., p. 1938.  As remarked, appellees acquired their lot with both constructive and actual notice of the rules and regulations of the company, and must hold and use it subject to and in conformity with those rules and regulations.

The case of *Ritchie* v. *Canton*, 46 Ill. App. 185, is authority, if authority be needed, for that proposition.   That case holds that a fee-simple owner of a lot in a cemetery, which subsequently passes under the control of a city, cannot be deprived of a pre-existing right by an ordinance of the city.   But it likewise expressly decides that the rule is otherwise in respect to subsequent purchasers, and that such purchasers are bound by the ordinance.   See, also, *Mount Moriah Cemetery Ass'n* v. *Commonwealth of Penn.* (Pa.) 22 Am. Rep. 743.

The decree is amenable to the further objection that it undertakes to prescribe rules and regulations for the management of the company, to the extent even of determining the fund out of which the salary of the superintendent shall be paid.   It is not permissible for a court to thus substitute its own business discretion and judgment for that of the company; its visitorial powers have no such scope.   1 Clarke & Marshall on Private Corp., 547.

In the case of *Town of Harrisonburg* v. *Roller*, 97 Va. 582, 34 S. E. 523, this court said:  "The court, by its decree, not merely perpetually enjoined the town from performing the work in the manner it proposed, but went even further and fixed permanently what the grade of the sidewalk in front of the residence of the appellee should be, and minutely prescribed the manner in which the town should do the work. This was plainly beyond the jurisdiction and power of the court.   The result of such interference by a court of equity

would be to control absolutely the Council of a city or town in the exercise of the legislative functions plainly conferred upon it by the charter of the city or town, and to be exercised by the Council according to its discretion; to usurp powers expressly conferred upon the Council, and to substitute the discretion of the court in the place of that of the Council."

The contention, on behalf of the appellee, Goodwin, that the rules and regulations in question are in restraint of trade, is without merit. That doctrine has no application to the case of a private cemetery conducting its affairs in its own way, and by agents of its own selection, for the *bona fide* purpose of effectuating the objects for which the company was organized.

It follows from these views that the decree appealed from must be reversed, and this court will enter a decree perpetuating the injunction.

*Reversed.*