# Richmond.

## Zircle v. Southern Railway Co.

### November 19, 1903.

Absent, Buchanan, J.*

1. RAILROADS—*Branch Roads—Consent of Stockholders.*—Under the provisions of Acts of Assembly, 1897-'8, p. 172, the consent of the stockholders of a railroad company is not necessary to authorize the president and directors of the company to construct a branch road of less than five miles in length.

2. PUBLIC USE.—Where a use is public a trust attaches to the subject condemned for the benefit of the public, of the enjoyment of which it cannot be deprived by the company without a reasonable excuse, and the State retains the power to regulate and control the franchises of the company and to fix rates.

3. RAILROADS—*Eminent Domain—Supervision by Courts.*—The Legislature of this State has expressly delegated to railway companies the power of eminent domain. In the exercise of that power they represent the sovereignty of the State, and decide, within certain limitations, what and how much land of the citizen they will condemn for their purposes. Within those limitations, their discretion is practically absolute. Courts may supervise the exercise of that power, but will not undertake to control their discretion in taking property for their use, unless there has been a very clear case of abuse of the power.

4. RAILROADS—*Eminent Domain—Branch Road to Industrial Enterprise—Private Use.*—A railway built for the purpose of reaching an industrial enterprise is for a public use, and the company is entitled to exercise the power of eminent domain in acquiring property necessary for its construction, provided the general public has the right to use it. This is true, though the private company advance the money temporarily for the construction of the road. This is not a taking for a private use.

*Judge Buchanan was detained at home by sickness.

5. EMINENT DOMAIN—*Legislative Function.*—The question of the necessity, propriety, or expediency of resorting to the exercise of the power of eminent domain, in the absence of constitutional provision to the contrary, is a legislative and not a judicial function.

Error to a judgment of the County Court of Shenandoah county, rendered March 19, 1902, in a condemnation proceeding wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant. A writ of error was refused by the Circuit Court of Shenandoah county.

*Affirmed.*

The opinion states the case.

*Bennick & Williamson* and *J. W. Bauserman,* for the plaintiff in error.

*H. H. Downing,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This is a writ of error to an order of the County Court of Shenandoah county, condemning 2.3 acres of land, the property of the plaintiff in error, Abram Zircle, for the purposes of the defendant in error, the Southern Railway Company, in constructing a branch road or spur track, springing from a point on the Manassas Branch of the Southern Railway, near Forrestville, and extending a distance of two-thirds of a mile, to Manor Mills.

The act under which these proceedings were had provides that: "The president and directors of any company incorporated to construct a railroad or other work of internal improvement may cause to be made in connection therewith, or may purchase branch railroads or lateral works not exceeding five miles each way in length, and under a resolution adopted in general meeting by two-thirds of all the votes of all the stockholders, may cause to be made, or may purchase branch rail-

roads or lateral works not exceeding twenty miles in length."
Acts 1897-'8, p. 172.

It is insisted by plaintiff in error that the County Court was
without jurisdiction in the premises, for the following reasons:

(1) Because it does not appear that the resolution provided
for in the foregoing statute was ever adopted by the stockhold-
ers; and,

(2) Because the Southern Railway Company, after it had
determined to construct the branch road or spur track in ques-
tion, made no attempt to purchase the land in controversy be-
fore instituting condemnation proceedings as required by sec-
tion 1074 of the Code. In respect to these contentions, it is
sufficient to remark: Of the first, that the requirement referred
to has no application where, as in this case, the branch road or
lateral work does not exceed five miles in length; and of the
second, that it is not sustained by the evidence. The controll-
ing question in the case involves the power of the Southern
Railway Company to condemn the land in controversy for the
purpose indicated. The contention of plaintiff in error in that
regard is that the object of the proceeding was to build a spur
track to a private enterprise, Manor Mills, whose output the
Railway Company already handled, for the sole benefit and con-
venience of the owners of that property. In other words, that
is was an attempt on the part of the Railway Company to con-
demn private property for private use, and was, therefore, with-
out sanction of law.

While the agreement between the Railway Company and the
Mill Company justifies the conclusion that the primary object
in constructing the spur track was to reach that industry, it also
appears that it was for the use of the Railway Company and
third parties (the public, who might choose to patronize the
Railway Company) as well. The circumstance that the Mill
Company agreed, in the first instance, to contribute a certain

amount to the cost of constructing the track, does not affect the legal aspect of the case. The contract stipulated that the sum so advanced was to be returned by the Railway Company, which was to become the absolute owner of the property. So that the transaction, in legal effect, amounted merely to a loan by the Mill Company to the Railway Company.

The authorities practically speak with one voice to the effect, that if the use to be subserved is a public use, the fact that the branch road enures to the advantage of a particular individual, or class of individuals, will not render the use any the less public.

Indeed, it is a matter of common observation, that the possibility of reaching industrial enterprises along the proposed route of a railway is a legitimate and important factor in determining the question of location.

Lewis, in his work on Eminent Domain, at sec. 165, says: " 'Public use' means the same as 'use by the public.' " The test whether a use is public or not may be determined by the fact that, where the use is public a trust attaches to the subject condemned for the benefit of the public, of the enjoyment of which it cannot be deprived by the company without a reasonable excuse. And by the further fact that the State retains the power to regulate and control the franchises of the company, and to prescribe the amount of charges and tolls which it shall be lawful for the company to exact for the transportation of passengers and freight.

The Legislature has expressly delegated to railway companies the power of eminent domain. In the exercise of that power, they represent the sovereignty of the State, and decide, within certain limitations, what and how much land of the citizen they will condemn for their purposes. Within those limitations, their discretion is practically absolute.

It is competent for the courts to supervise the exercise of the power delegated, but they cannot invade the bounds set by the

Legislature; and will not undertake to control the discretion of the companies in taking property for their use, unless there has been a very clear abuse of power. *St. Louis R. Co.* v. *Petty* (Ark.), 20 L. R. A. 434, 21 S. W. 884.

In that case the Supreme Court of Arkansas, speaking through Cockrill, C. J., says: "The appellee argues that the proof shows that the railway's proceeding to condemn is prosecuted, not for its own use, but for the use and benefit of the Western Coal & Mining Company—a corporation which owns and operates a coal mine near the appellant's line of railway. The managers of the railway were probably instigated by the Coal Company to institute the condemnation proceeding, and they doubtless intended that the Coal Company should derive a benefit therefrom. But those facts alone do not furnish a legal reason sufficient to warrant judicial interference with the power delegated to the corporation by the Legislature. If the land is needed for legitimate railroad purposes, the motive which influenced the railway managers in undertaking the work will not take from it its public character. A proposed public user will not be enjoined by the courts upon the ground that it will further private interests." . . . "To be public, the user must concern the public. If it is an aid in facilitating the business for which the public agency is authorized to exercise the power to condemn, or if the public may enjoy the use of it, not by permission, but of right, its character is public. When once the character of the use is found to be public, the court's enquiry ends, and the legislative policy is left supreme, although it appears that private ends will be advanced by the public user." The language of the learned judge in that case is peculiarly applicable to the facts in the case under consideration; and the doctrine there laid down finds distinct expression in numerous decisions cited in the opinion and in an exhaustive note to the case.

The annotators, in referring to the cases of *Kyle* v. *Texas &*

*N. O. R. R. Co.* (Tex. App.), 4 L. R. A. 275, and *Pittsburg W. & K. R. Co.* v. *Bentwood Iron Works,* 31 W. Va. 710, 8 S. E. 453; 2 L. R. A. 680, relied on by plaintiff in error as sustaining a contrary doctrine, observe:

"These two cases are plainly in direct conflict with the cases cited in the former part of this note.

"Indeed the court, in *Kyle* v. *Texas & N. O. R. Co., supra,* expressly adopted the views expressed in a dissenting opinion delivered by Judge Trunkey in Getz's App. *supra.*"

The reports abound with decisions to the effect that a railway built for the purpose of reaching an industrial enterprise is for a public use, and the company is entitled to exercise the power of eminent domain in acquiring property necessary for its construction, provided the general public has the right to use it. Chicago & N. W. R. Co. (Wis.), 56 L. R. A. 240, and cases cited in opinion and notes; 2 Min. Inst (4th Ed.) 25; 1 Wood Ry. Law, pp. 648-653.

As remarked, the question of the necessity, propriety, or expediency of resorting to the exercise of the power of eminent domain, in the absence of constitutional provision to the contrary, is a legislative and not a judicial question. *Alex. &c. R. Co.* v. *Alex. & W. R. Co.,* 75 Va. 780, 40 Am. Rep. 743; *Roanoke* v. *Berkowitz,* 80 Va. 616; *Tait* v. *Central Lunatic Asylum,* 84 Va. 271, 4 S. E. 697.

In a very recent case, this court had occasion to observe that the visitorial powers of a court over a private corporation do not authorize the substitution of its business judgment for that of the corporation. *Roanoke Cemetery Co.* v. *Goodwin,* 101 Va. 605, 44 S. E. 769.

It is plain from the authorities that the order complained of is without error, and it is affirmed.

*Affirmed.*