A. B. HEILIGMAN, Plaintiff in Error,

v.

Robert W. CHAMBERS, Defendant in Error.

No. 38299.

Supreme Court of Oklahoma.

April 14, 1959.

Bassmann & Gordon, Jack K. Mayberry, Claremore, for plaintiff in error.

John Charles Feagins, Claremore, for defendant in error.

IRWIN, Justice.

During the year of 1883, on the unallotted lands of the Cherokee Nation, a private

burial plot was established which was afterwards allotted to plaintiff's grandmother, Nannie Chambers. The land on which the plot was established is now described as Lot 8, Block 3, Jean-Ann Addition to the City of Claremore, Oklahoma, now owned by the defendant and no reservation of the plot for cemetery purposes appears in the chain of title. Mrs. Melinda T. McCoy, mother of Nannie Chambers, was buried there in 1883; Tuxey Holt Carey in 1885, and an infant called Baby Hardgraves was buried there in 1912. On October 7, 1957, defendant, together with others under his direction went to the private cemetery and started preliminary work with the view of disinterring and removing the bodies buried therein to the Woodlawn Cemetery at Claremore, Oklahoma.

On October 8, 1957, Robert W. Chambers as plaintiff filed action against the defendant praying for a permanent injunction against injuring or defacing the sepulchre and burial place or from covering the same with dirt and rubbish and from disinterring and removing said bodies and for a mandatory injunction requiring defendant to replace the retaining wall and markers.

Plaintiff alleged that a private cemetery had been marked and set aside forever and had been dedicated and appropriated for interment and last resting place, and that he is the great grandson of. Melinda T. McCoy, one of the persons buried in the sepulchre, and entitled to the custody and control of her body; that he had previously denied permission to the defendant to disinter the body of Melinda T. McCoy and permit reburial in another cemetery, but the defendant had secured disinterment permits from the State Department of Health for the disinterment and reburial of the bodies and unless restrained, he believes the defendant will further deface and obliterate said graves and cause the bodies to be disinterred and removed to another burial place. A temporary restraining order was issued and hearing set by the court for determination of the issuance of a temporary injunction.

The defendant filed a motion to dissolve the temporary restraining order and an answer in which he admits the ownership of the land where the bodies are buried, and that plaintiff is the great grandson of Melinda T. McCoy and that Tuxey Holt Carey is the great uncle of plaintiff; that he has contracted with Musgrove Funeral Home of Claremore, Oklahoma, to disinter and remove said bodies from their present place of burial to Woodlawn Cemetery. He further alleged he obtained consent from Mrs. Jessie H. Parker, nee Carey, the only living granddaughter and nearest of kin of Melinda T. McCoy and the only living child of Tuxey Holt Carey, to remove said bodies to Woodlawn Cemetery. That he obtained consent for removal of the body of Baby Hardgraves to Woodlawn Cemetery from Della Hardgraves, the mother and nearest of kin. That all of the expenses of removal are to be paid by the defendant and that plaintiff lacks authority or legal right to control disinterment and removal under the laws of the State of· Oklahoma.

On hearing, the matter was tried to. the court and judgment entered granting a permanent injunction enjoining the defendant from disinterring and removing or in any manner interfering with or disturbing the body of Melinda T. McCoy, and ordered defendant to restore and replace premises so far as practical. From this action of the court the defendant appeals. The parties will be referred to herein as they appeared in the trial court.

In considering the issues, three questions are presented. (1) Is plaintiff the proper party to maintain the action? (2) Was the family burial ground abandoned? (3) Is the defendant clothed with proper authority to cause the removal of the bodies from the private burial ground to another cemetery?

Plaintiff testified that he is the great grandson of Melinda T. McCoy, a citizen by blood of the Cherokee Nation. That in 1883, a private burial ground was established on public land that was afterwards allotted to his grandmother, Nannie

Chambers; that the burial plot was enclosed with a sandstone wall and three bodies were buried therein, Melinda T. McCoy and Tuxey Holt Carey, in a concrete sepulchre above ground and Baby Hardgraves in a grave; that each burial place was marked by a headstone. He testified that Tuxey Holt Carey was his great uncle; that Jessie Parker is the granddaughter of Melinda T. McCoy and daughter of Tuxey Holt Carey, and that Marjorie Bartles is also a granddaughter of Melinda T. McCoy, and named numerous other relatives not of the same degree of blood.

Defendant testified that he is the owner of Lot 8, Block 3, Jean-Ann addition to the City of Claremore, Oklahoma, and that the family burial plot established by Nannie Chambers is located thereon; that he located the mother of Baby Hardgraves and secured her consent in writing for the disinterment and removal of the body to Woodlawn Cemetery in Claremore, and she also executed an application to the State Health Department for disinterment and removal; that he located Jessie Carey Parker, the granddaughter of Melinda T. McCoy and daughter of Tuxey Holt Carey, and secured the written consent for the disinterment and removal of the bodies of her ancestors to Woodlawn Cemetery and she also executed applications to the State Department of Health for the disinterment and removal; that all applications were approved and authority granted by the Oklahoma Department of Health, for the disinterment and removal to be done by Musgrove Funeral Home of Claremore.

That a family burial plot may be set apart in Oklahoma, by the owner of the freehold has long been a custom in this state, dating back before statehood when the custom was more prevalent. At the time the first body was buried in this plot, it was on unallotted Indian land belonging to the Cherokee Nation which afterwards was allotted to Nannie Chambers. Conditions were such at that time, there were very few public cemeteries and most families had their own family plot. In the case of Clinton Cemetery Ass'n v. McAttee,

27 Okl. 160, 111 P. 392, 393, 31 L.R.A.,N.S., 945, we quoted from the case of Kingsbury v. Flowers, 65 Ala. 479, 39 Am.Rep. 14, as follows:

"Burial places for the dead are indispensable. They must be the property of the public, devoted to the uses of the public; or the owner of the freehold may devote a part of his premises to the burial of his family or friends. It is but a just exercise of his dominion over his own property."

thereby giving recognition to the propriety of private or family plot cemeteries. The plot in question having been established on land afterwards allotted to Nannie Chambers, a stone wall having been erected around the plot, persons laid to rest therein in a proper manner and the place of burial being designated by proper markers, the plot fulfills all the requirements of a family burial plot. Benn v. Hatcher, 81 Va. 25, 59 Am.Rep. 645; Chas. E. Knox Oil Co. v. McKee, 101 Okl. 56, 223 P. 880.

After the death of Nannie Chambers, who established the family burial plot, and upon the sale of the property without reservation of the said plot, who had the right thereto? We do not find the answer in the statutory law of this state, nor do we find any expression from our Court that is helpful. This being a case of first impression, we will examine the holdings of other states that shed light on the question. In the case of Hines v. State, 126 Tenn. 1, 149 S.W. 1058, 42 L.R.A.,N.S., 1138, the court said:

"Where an owner of land has appropriated a small part thereof as a private burying ground, and it has been used as such, the land cannot be conveyed or devised so as to interfere with such use, and he and his grantees, devisees, and heirs hold the title in trust for the benefit of those entitled to burial in it, who also have a right to visit it for the purpose of repairing, beautifying, and protecting the graves and grounds, and for these purposes a right of ingress and egress from the

nearest public road, to be exercised at reasonable times and in a reasonable manner.

\* \* \* \* \* \*

"In a conveyance or devise of land, part of which the owner appropriated as a private burying ground, it is not necessary to expressly reserve the right of burial therein; such reservation being implied, and the purchaser charged with notice of the fact that it has been dedicated to burial purposes, and of the rights of those entitled to use it."

In this case the plot was enclosed with a sandstone wall, three bodies were buried therein, two above the surface and one in the ground, with suitable markers. There were trees planted and the entire plot was visible to the naked eye of one looking over the land with the views of purchasing. We therefore hold defendant was charged with notice of the fact that this plot had been dedicated for burial purposes and took title to the ground subject to the rights of the heirs of those buried therein, even though the same was not reserved in the chain of title.

■■ When a family burial plot is established, it creates an easement against the fee, and while the naked legal title will pass, it passes subject to the easement created. The easement is in favor of the person creating and establishing the burial plot and the right inherent in such person descends to his heirs. The easement and rights created thereunder survive until the plot is abandoned either by the person establishing the plot or his heirs, or by removal of the bodies by the person granted statutory authority. Nicholson v. Daffin, 142 Ga. 729, 83 S.E. 658, L.R.A.1915E, 168; Trefry v. Younger, 226 Mass. 5, 114 N.E. 1033; Hook v. Joyce, 94 Ky. 450, 22 S.W. 651, 21 L.R.A. 96; Roanoke Cemetery Co. v. Goodwin, 101 Va. 605, 44 S.E. 769; Boyd v. Ducktown Chemical & Iron Co., 19 Tenn.App. 392, 89 S.W.2d 360.

■ Defendant contends that the family burial plot was abandoned prior to the time of his purchase of the property on which the plot was located, while the plaintiff takes the position the evidence docs not show abandonment. There was testimony concerning the general deterioration of a portion of the enclosure wall, and to the inside of the plot. 10 Am.Jur. Sec. 35, page 512 lays down the following rule:

"As long as a cemetery is kept and preserved as a resting place for the dead, with anything to indicate the existence of graves or as long. as it is known and recognized by the public as·a graveyard, it is not abandoned."

While some states do not follow the above rule, we are inclined to follow the states holding that disuse, failure to cut grass or care for the graves and headstones do not constitute abandonment, for the purpose of maintaining the burial plot, but if followed by removal of the bodies therein, such use will be deemed abandoned. In the case of In re Board of Transportation of City of New York, 140 Misc. 557, 251 N.Y.S. 409, 410, the Supreme Court of New York stated the rule as to abandonment as follows:

"Mere disuse as to new interments, failure to cut grass or care for headstones, does not constitute 'abandonment', of cemetery, but, if followed by removal of bodies therein, such use will be deemed abandoned".

See also Adams v. State, 95 Ga.App. 295, 97 S.E.2d 711; Frost v. Columbia Clay Co., 130 S.C. 72, 124 S.E. 767.

■ The defendant next contends that he has secured the written consent of the nearest of kin to the deceased by degree and the necessary permits from the State Health Department and is therefore entitled to disinter and remove the bodies. In this connection, he also contends the plaintiff is not the proper party to maintain the action as he is not in the same degree nearest of kin to the persons buried in the family plot. These two propositions will be discussed together. Title 21 O.S. 1951 § 1158 provides:

2nd. "If the deceased were not a married woman, but left any kindred, the duty of burial devolves upon any person or persons in the same degree nearest of kin to the deceased, being of adult age, and possessed of sufficient means to defray the necessary expenses."

Section 1164 of the same title provides:

"Whenever a cemetery or other place of burial is lawfully authorized to be removed from one place to another, the right and duty to disinter, remove and rebury the remains of bodies there lying buried devolves upon the same persons required to bury the deceased in the order in which they there are named, and * * *."

While the above statutes are of a penal nature and do not necessarily govern the disinterment, removal and reburial of bodies; Oklahoma has no other statute applicable, and we are inclined to give consideration to them to determine the rights, duties and privileges of those who may be affected, which under the statutes devolve upon the person or persons in the same degree next nearest of kin.

We considered the definition and application of the words "nearest relation" in the case of De Graffenreid v. Iowa Land & Trust Co., 20 Okl. 687, 95 P. 624, 635, wherein we quoted from Swasey v. Jaques, 144 Mass. 135, 10 N.E. 758, 59 Am.Rep. 65 as follows:

"It is * * * difficult to distinguish between the expressions 'next of kin,' 'nearest of kin,' 'nearest of kindred,' and 'nearest blood relations'; and primarily the words indicate the nearest degree of consanguinity."

and we then stated as follows:

"And so we are of the opinion that 'nearest relations', indicates the 'nearest degree of consanguinity,' and is equivalent to 'next of kindred'.

In the case of In re Autopsy of Kyle, Okl., 309 P.2d 1070, 1073, we said:

"Various and sundry meanings have attached to the word 'kindred' and the words 'next of kin'. In 51 C.J.S. at page 456, the word 'kindred', as there defined, includes 'next of kin'. With reference to 'next of kin' at page 452 of the same Work, we find the following:

" 'The term is used in the law with two meanings: (1) The nearest blood relations according to the law of consanguinity. (2) Those entitled to take under the statutory distribution of intestate estates. * * *' "

Applying the definition above to the facts in this case, it is apparent that the first meaning, "nearest blood relations" according to the law of consanguinity refers to the duty imposed on the person or persons in the same degree nearest of kin and in this instance refers to the duty of removal and reburial of the ancestors. The person or persons referred to in Sec. 1164, supra, would be the next of kin in the same degree, by blood to the deceased and would not include any person further removed.

It is uncontradicted that Jessie Carey Parker and Marjorie Carey Bartles are blood cousins and are granddaughters of Melinda T. McCoy, deceased, and that the consent to remove and rebury the body of Melinda T. McCoy had not been given by Marjorie Carey Bartles. Since it was necessary that consent to the removal and reburial be secured from all persons in the same degree next nearest of kin, as defined herein, and the consent of Marjorie Carey Bartles was not obtained, the defendant had no right on October 7, 1957, to disinter and remove the body of Melinda T. McCoy to another place of burial.

We cannot sustain defendant's contention that plaintiff was not the proper plaintiff as he was not of nearest degree of kin. We have held herein that upon the establishment of the family burial plot, the same became an easement against the fee simple title which was not transferred by deed, but remained for the benefit of the person

establishing such plot, and her heirs until abandoned. The right to visit and care for it descended to the heirs of Nannie Chambers together with the right and duty of preventing the desecration of the graves. The plaintiff is a great grandson of Melinda T. McCoy and he or any other heir of a person buried in such plot, were and are entitled to institute an action necessary toward the preservation of such plot until the same is finally abandoned. There being no error shown, the judgment of the trial court is affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and WELCH, HALLEY and JACKSON, JJ., concur.

BLACKBIRD and BERRY, JJ., concur in results.