388 So.2d 632 (1980)
Frank C. MINGLEDORFF, Appellant,
v.
William CRUM, Preston Daughtry, and Leon Crum, As Trustees of the Voluntary Unincorporated Association, Appellees.
No. SS-438.
District Court of Appeal of Florida, First District.
September 25, 1980.
*633 Alfred O. Shuler of Shuler, Apalachicola, for appellant.
Brandt W. Davis, Apalachicola, for appellees.
McCORD, Judge.
This appeal is from a final declaratory judgment finding and declaring the rights of the respective parties in relation to land used over a period of years as a cemetery. We find no error. The learned trial judge has set forth the facts and the law in relation to this controversy in opinion form. Since we agree with it and could not improve upon it were we to write an opinion, we adopt it as the opinion of this Court as follows:
1. The petitioners, William Crum, Preston Daughtry and Leon Crum, describe themselves as trustees of an unincorporated voluntary association known as Roberts Cemetery Association. They seek to have the area of a burial ground located on property claimed to be owned by defendant declared to be a dedicated public cemetery with right of members of families and descendants of those now buried there to have the right of burial in the cemetery so long as spaces are available, and to declare a right of the plaintiff trustees to enclose and properly maintain the area and to have access to same from the nearest public road.
2. The defendant denies there has been any dedications and claims ownership of the area and denies any rights to future burials. He challenges the standing of plaintiffs and otherwise asserts loss of any rights to use the property for future burials. By Counterclaim he also seeks to quiet the title to the lands by removing any cloud arising out of the presence of grave sites on the property claimed by him.
3. As will be more fully discussed hereinafter, the Court finds that the property described below is and has been set apart by acts and deeds of owners of the property, who have created an easement therein for the burial of those already interred and for the future burial of descendants of and members of families of those now buried there so long as spaces are available:
Commence at the concrete monument located on the northern boundary of State Road number S-370, which is 40 feet north of the SW corner of W 1/25 of NW 1/4 of SW 1/4 of Section 1, Twp. 6 S, R 3 W (said corner being in the center line of said State Road S-370), thence run north 89° 41' 31.7" east 788.11 feet along the north boundary of State Road S-370 to a concrete monument, thence run north 4° 24' 21" east a distance of 162 feet, more or less, across the outline of an old dirt rut road and along an established fence line to a point on the northern edge of a wooded area adjoining a cleared and maintained area in which graves are located, which is the POINT OF BEGINNING; thence continue north 4° 24' 21" E, along the said fence line a distance of 223.09 feet, more or less, to a point 36 feet, more or less, south of the top of the south bank of the Ochlockonee River, thence run north 89° 30' 21" east parallel *634 to the top of the south bank of said river a distance of 67.76 feet to a point, thence run south 0° 46' 28" east, parallel to a marked driveway a distance of 219 feet, more or less, to a point on the northern edge of the wooded area adjoining the above mentioned cleared area, thence run in a westerly direction to the point of beginning.
(The above calls are drawn from or interpolated by reference to a survey by Miller Walston, Registered Surveyor, dated January 4, 1979 and in evidence as Plaintiff's Exhibit 1.)
4. It is the intent of this Court that the above said description of the cemetery shall not be construed as an accurate survey of the area so designated. It is merely an approximation to describe same. The cemetery described herein shall include all visible graves now present, and shall establish a buffer zone fifteen feet wide between the driveway separating the cemetery from the respondent's adjacent property and the eastern most visible grave site. A further buffer zone of about thirty-six feet wide is established between the top of the south bank of the Ochlockonee River and the northern most visible grave site. No burials shall be made in the buffer zones nor in other areas not included in the description above given.
5. The Court finds that the area designated is and has been a fully visible burial ground for many years, and was originally made available with the knowledge, consent and cooperation of the then title owners of the property. Such was not evidenced by any title documents or other paper evidence until the execution of a deed, dated May 24, 1977, from Fenton Jones to petitioners, recorded June 27, 1978 in O R Book 140 p. 614 of the Franklin County public records. The deed purported to convey the area sought by petitioners to be declared a public cemetery, and extends from State Road S-370 northerly about 400 feet to the Ochlockonee River, and varies in width from a little over 100 feet at the road to about 80 feet along the river. Mr. Jones had no title to the property, and thus the instrument itself is not a valid muniment of title.
6. The plaintiffs contend that the area they claim has been dedicated as a public cemetery and that such should be judicially declared. The defendant denies that there has been a valid dedication. He evidences no interest or intention to disturb any existing graves or to interfere with relatives or friends who wish to visit and maintain upkeep on the burial sites presently there. He does object to the area being classified as a public cemetery with burial being available for any person. He does not object to future use for interment of family and close connections of those already buried there, but desires to confine it to an area along the west fence line, more or less in the general vicinity in the center of the plot, which includes a twenty-five-foot square enclosed area of six graves, and extends westerly to the general area of a 5' X 7' fenced plot lying just outside of and west of the fence. The smaller fenced plot lies outside of the land involved here. However, to restrict the area available for future burials to that suggested by Mr. Mingledorff would preclude burials in the close vicinity of many graves located outside this area.
7. There seems to be little statutory or case law in Florida dealing with the issues in this case. The plaintiffs contend there has been a common law dedication of this property for a public cemetery. A common law dedication is defined as the setting apart of lands for public use, to constitute which there must be an intention by the owner clearly indicated by his words or acts to dedicate the land to public use and an acceptance by the public of the dedication. Palmetto v. Katsch, 86 Fla. 506, 98 So. 352; Miami v. F.E.C.R. Co., 79 Fla. 539, 84 So. 726. An intent to effect such a dedication may be shown by any act by the owner showing conclusively an intent to dedicate and an acceptance by the public. Miami v. Jansik, (Fla.) 89 So.2d 644. It may result from the conduct of the owner or by his permissive manifestations, Lovey v. Escambia County, Fla. 1st DCA 1962, 141 So.2d 761. However, strictly speaking *635 there can be no dedication to private uses or to uses public in nature but the enjoyment of which is restricted to a limited part of the public. Burnham v. Davis Island, Inc., Fla. 1956, 87 So.2d 97. The substance of dedication is that it is for the use of the public at large. See 10 Fla.Jur. (Dedication) Section 8. In view of these principles, the evidence does not indicate an intent on the part of the owners at the time the burials were consented to that the area be for the general public, but was more or less reserved for the family and friends of the owners. The property was early known as Shipley Landing. Mr. Green Roberts appears to have been the owner at the time of some of the early burials, though there is some evidence that burials were made when the property was owned by a Mr. Shipley, before the turn of the century. There appear to be more than fifty graves in the area which are identified, some of which go back to the early 1900's, but a number are of recent dates. Mr. Green Roberts seems to have held the title prior to his death in 1938. His widow, Mrs. Fannie Roberts, from time to time cleared and cleaned the cemetery. There were conveyances, apparently by the Green Roberts descendents, which eventually vested title to the property in Esther Roberts in 1947, and she conveyed her title to Vernon Brabham in 1954, who conveyed to Gladys Suggs Parrish and also to Roy E. Parrish in 1954 and 1958. After Mr. Parrish's death, sometime prior to May 12, 1971, the title to all the property became vested in Gladys Suggs Parrish, who conveyed the property, in 1977, to Frank C. Mingledorff, the defendant. The evidence indicates that when the Parrishes acquired the property in the 1950's the cemetery was recognizable but much grown up. However, after about two years people came up to clear the area, and Mrs. Parrish gave some of the grass to sprig the lots. Later there were some burials in the area. When Mr. Mingledorff bought the property in 1972, the central area was cleared, but between there and the river it was largely grown up, but was later cleared. There is no question but that Mr. Mingledorff knew of the presence of the graves when he bought the property, but he more or less assumed that there would be no more, or very few, additional burials. It also is clear that those who are now buried there are confined to the families who lived in the general area near the Ochlockonee River. The plaintiffs are members of the families buried there, and they and other relatives of the deceaseds have strong sentimental attachment to the area and desire to be interred there themselves. There have been no documents relating to the cemetery use, but all of the circumstances indicate that the owners intended only those ties by blood, marriage, neighborhood, or friendship to the owners and to those interred would be privileged to be buried there. Therefore, the Court does not deem that there has been a common law dedication to the extent that any part of the area has become a public cemetery.
8. Though a common law dedication, in its sense of a commitment to the general public, does not arise to create a private or family burial ground, there is authority for the proposition that owners may, without formal written documentation, establish and set aside a place of burial for the benefit of those included within a family or neighborhood and that such may be evidence by acts, acquiescence or other conduct evincing clearly such a purpose. In Hines v. State, 126 Tenn. 1, 149 S.W. 1058, 42 L.R.A. (N.S.) 1138, it was stated:
"Where an owner of land has appropriated a small part thereof as a private burying ground, and it has been used as such, the land cannot be conveyed or devised so as to interfere with such use, and he and his grantees, devisees, and heirs hold the title in trust for the benefit of those entitled to burial in it, who also have a right to visit it for the purpose of repairing, beautifying, and protecting the graves and grounds, and for these purposes a right of ingress and egress from the nearest public road, to be exercised at reasonable times and in a reasonable manner ...
"In a conveyance or devise of land, part of which the owner appropriated as a *636 private burying ground, it is not necessary to expressly reserve the right of burial therein; such reservation being implied, and the purchaser charged with notice of the fact that it has been dedicated to burial purposes, and of the rights of those entitled to use it."
9. In the well considered case of Heiligman v. Chambers, Okl. 1959, 338 P.2d 144, 75 A.L.R.2d 583 the issue was the right of the owner to disinter a body in a private burial plot and the question arose as to who has authority to give consent to disinterment, but the status of a burial ground, such as is involved in the case before this Court, was discussed as follows:
"When a family burial plot is established, it creates an easement against the fee, and while the naked legal title will pass, it passes subject to the easement created. The easement is in favor of the person creating and establishing the burial plot or his heirs. The easement and rights created thereunder survive until the plot is abandoned ..."
And on the question of abandonment, the same case holds:
"As long as a cemetery is kept and preserved as a resting place for the dead, with anything to indicate the existence of graves or as long as it is known and recognized by the public as a graveyard, it is not abandoned."
See also annotation in 75 A.L.R.2d 591 et seq. (Private or Family Cemeteries).
10. These authorities and equitable principles, together with a recognition of the concern and sentiments of surviving descendents, and relatives of persons interred on a burial plot, for a proper respect and care for the resting places of departed loved ones and also of a desire to eventually be buried there also, dictate that the law observe and protect the rights of those survivors. Whether the legal creation of a family or community cemetery be labeled a "dedication," a "trust" or an "easement" the rights and limitations in the area of the fee owner and of others having an interest are the same and are reasonably well established. The rights to enter, care for and maintain the area is limited to those who are related, by blood or marriage, to those deceased persons interred there. Such entry and activity is to be restricted to reasonable times. It shall also be confined to conventional maintenance of the burial sites and grave markers, beautification in the planting and cultivating of flowers, shrubs and grasses and controlling of weeds and other unsightly growth. Coupled with these rights is a continual obligation to actually maintain the area and the grave sites in a clean, dignified, sightly fashion and to remove dead flowers and stagnant water in floral containers and otherwise abate any conditions which render any part of the area unhealthy or offensive to the senses.
11. There is also the right in these relatives of those interred to themselves be buried in the area to the extent that there are available unused grave sites. To this end there is the right of funeral directors or others in charge of the burial arrangements to access to the area for opening the grave and doing the necessary to complete the interment and properly closing the grave. Also, there shall be the right to conduct suitable graveside services and to accommodate the attendance at such services of such persons as care to be present, provided that property outside the cemetery area shall not be damaged. Such services shall be conducted during daylight hours and in such manner and at such times and only for such duration as shall not interfere with the use of defendant's other property. Also, such services shall be conducted in a quiet and dignified fashion without resort to significantly loud speech, singing, or instrumentation which would be in excess of what is customary in the community for such services.
12. The right to visit for maintenance and upkeep purposes and the right to burial in the designated area are thus dependent upon the fulfillment of the continuous duties of preserving the area in a state of tidiness and dignity. Also, the rights of the owner are to be fully respected, which include the right to constant access to his *637 other property, freedom from damage to his property, and freedom from disturbance and the enjoyment of his other property. It is an established custom, almost universally recognized, that the right of interment carries the right to identify a grave site with a marker of stone, masonry, or other material of durability and capability of being easily maintained. Such markers in this area are to be only such as are customary in the community, and structures of great height or complexity are not contemplated. Of course, the erection or continuance of enclosures of a group of family graves by fences or low walls of metal, wood, stone or masonry are permissible, provided they do not materially impair access to other grave sites for future burials or for their maintenance and upkeep.
13. The plaintiffs describe themselves as "trustees," of the "Roberts Cemetery Association." However, there does not appear to be any document establishing such a trust or defining their duties, powers, and purposes. It will be necessary that such a document be prepared and recorded which shall define their purposes, powers, method of operation, and the method of selecting their successors. It appears implicit from the pleadings and evidence in this case that they are each related, by blood or marriage, to one or more of the persons buried in the cemetery involved here, that they desire to cause the cemetery to be properly maintained and that they desire to be themselves interred there when they have passed on. The Court will recognize that such is the case and that they have a proper interest to maintain this action. Also, it is recognized that they are and have assumed and accepted responsibility for a proper future maintenance of the cemetery and for regulating and policing future burials there to the end that the rights of relatives of persons buried there may be given effect and that the rights of the owner are also fully honored. It will be necessary that they make a survey and cause to be marked the boundaries of the cemetery as hereinbefore described; that they identify and map existing grave sites and make proper records of same; that they locate and identify unused grave sites for future burials; that they locate, identify and establish necessary and suitable walks, passageways and other areas to assure reasonable access to grave sites for upkeep and maintenance and for access to future grave sites for burial services and future maintenance. They shall also formulate and carry out a program of regular maintenance to effect needed repairs, cleaning, landscaping and other necessary procedures to preserve the area in a sightly, healthy and respectable state of upkeep. All of the rights of the trustees and of those who are beneficiaries of their trust are subject to, and their continuance are dependent upon, the fulfillment of the duties which are set forth herein. It is contemplated that there should be a general and complete maintenance and placing of the area in a condition of tidiness and elimination of the unhealthy and unsightly which may accumulate, at least once every three months. The trustees are under a duty to supervise and carry out this objective. The trustees shall also formulate a plan and procedure whereby unused grave sites may be allotted to those entitled to them and to establish such rules as may be feasible to facilitate their use as the occasion arises and to comply with the limitations set forth herein. It is recognized that future burials are limited to availability of grave sites, and that when all such grave sites are occupied then there are no rights to other burials. Burials are limited to one casket per grave site, and no future burials shall be made at a grave site in which there has already been an interment. The plaintiff trustees shall embody in their rules the limitations set forth herein and shall furnish same to the funeral directors in the area.
14. Accordingly, it is the finding and declaration of the Court that the property hereinbefore described is owned in fee simple by the defendant, subject however to an easement and trust held by the plaintiffs, as trustees, in behalf of the relatives, by blood or marriage, to persons now buried in said property for the right of visitation and upkeep *638 of existing grave sites and for future burial in unused grave sites to the extent that they are available, and it is further declared that such trust and easement shall continue so long as the duties and obligations of the trustees and their beneficiaries shall be substantially fulfilled and the cemetery kept in a state of tidy and healthy maintenance as hereinbefore specified. It is further declared that there are no rights of plaintiffs in any lands of defendant outside of the area hereinbefore described, except that of reasonable ingress and egress to the cemetery for the purposes herein set forth.
AFFIRMED.
MILLS, C.J., and THOMPSON, J., concur.