This is an appeal from a summary judgment entered against Dempsey Boyd and Frances S. Boyd, his wife (defendants). Plaintiffs are the heirs of Matthew Fenn. They filed a complaint alleging that the one acre of land set aside as a cemetery under the will of Matthew Fenn constituted an easement on land now owned by the Boyds. Defendants, desiring to expand their business, prior to the filing of the complaint, had their agents contact plaintiff Nancy Fenn Compton in an attempt to get permission from the Fenn heirs to remove the bodies buried at the site and reinter them elsewhere. Defendants also attempted to act under authority of Code 1975, § 11-47-62,[1] but their men disinterred several graves without complying with the notice required by the statute. The plaintiffs' complaint asked the trial court to order the defendants to re-establish the cemetery, to reinter all the disinterred bodies into the original gravesites, and for an injunction preventing further desecration of the cemetery. Both parties moved for summary judgment. After considering the pleadings, affidavit of a plaintiff with exhibits in support thereof, and depositions of one plaintiff, one defendant, and four other witnesses, the trial court granted plaintiffs' motion. We affirm in part, reverse in part, and remand.
Defendants have raised a number of issues for review, but the following are dispositive:
1. Did the trial court err in concluding that defendants' claim for breach of warranty against Matthew Fenn's heirs was not well taken?
2. Did the trial court err when it concluded, as a matter of law, that the doctrines of adverse possession and prescription have no application to an existing and identifiable family cemetery plot?
3. Did the trial court err when it determined that as a matter of law the cemetery had not been abandoned and thereby *Page 933 
erroneously grant summary judgment in plaintiffs' favor? We will separately consider these issues below.
 I. Defendants' Claim for Breach of Warranty
The evidence which was before the trial court on the motion for summary judgment indicated that a family cemetery existed on a plantation owned by Matthew Fenn, who died in 1885. Fenn's will stated:
 I desire that my body shall be decently buried at the graveyard on my plantation two miles east of Clayton in said County. It is my desire that one square acre of land including the graves of my former wife and children who have died, shall be set apart and forever dedicated to the purpose of a family graveyard with rights of way to and from same.
There was no final disposition of the plantation under the will, so the property passed in undivided equal shares to Fenn's sixteen surviving children; eight the children of his first wife, Matilda, and eight the children of his second wife, Martha. The evidence further indicated that the shares belonging to the children of Matilda were conveyed by deed within the family until in 1922, those shares all belonged to Matthew Homer Fenn. None of these deeds showed a reservation of any kind for a family cemetery. The day after the trial court granted summary judgment defendants filed exhibits purporting to indicate that Matthew Homer Fenn owned the entire property in 1922. They claim that the failure of these deeds to recite a reservation resulted in a breach of general warranty or warranty for quiet enjoyment which passed to him as a subsequent grantee. Assuming defendants are right in claiming that the entire interest in the property was held by Matthew Homer Fenn in 1922, the defendants cannot prevail on this issue because they did not derive their title from Matthew Homer Fenn.
The defendants do not claim their title by virtue of any conveyance from Matthew Homer Fenn or the heirs of Matthew Fenn. The defendants' chain of title is as follows. On February 11, 1927, the subject property was sold by foreclosure deed, without warranty, to E.E. Kennedy and wife. The Kennedys subsequently sold the property to W.N. Boyd and his wife Elina Boyd by warranty deed on January 2, 1950. At deposition, defendant Boyd testified, without elaboration, that he obtained title to the property from his father W.N. Boyd.
But, the evidence is without dispute that the foreclosure proceedings and the auctioneer's deed given pursuant thereto, were all based on a mortgage which had been fully satisfied prior to foreclosure. A satisfied mortgage is void. As noted inRichardson v. Stephens, 122 Ala. 301 at 307, 25 So. 39 (1899): "The mortgage being void conferred no rights upon the mortgagee or upon the appellant as the purchaser thereunder." Assuming, without deciding, that the mortgage purported to be foreclosed was properly given by the Fenn heirs, defendants obtained no claim of breach of general warranty or warranty for quiet enjoyment therefrom because a satisfied mortgage cannot possibly forge a valid link in the chain of title from the Fenns to the Boyds. For this reason, we affirm the trial court's judgment disallowing defendants' breach of warranty claim. We are aware that the trial court denied defendants' claim on another basis, but if the trial court reaches the correct result, it is immaterial that the wrong reason may have been given. Bank of the Southeast v. Koslin, 380 So.2d 826
(Ala. 1980).
 II. Adverse Possession and Prescription
Next, we consider whether the trial court correctly concluded that the doctrines of adverse possession and prescription did not apply to an existing and identifiable family cemetery plot. Defendants claim title to the disputed one-acre area by deed, by adverse possession, and by prescription. Plaintiffs urge that we adopt the law of Oklahoma as set forth in Heiligman v.Chambers, 338 P.2d 144 (Okla. 1959).
It is this Court's opinion that Heiligman already has been adopted in Alabama for determining the nature of the estate in, or the title to, a private cemetery. In Aldridge *Page 934 v. Puckett, 291 Ala. 104 at 106, 278 So.2d 364 at 366 (1973), this Court quoted Heiligman, stating:
 We believe that Alabama has inferentially followed the rule laid down in Heiligman v. Chambers, 338 P.2d 144 (Okla.), 75 A.L.R.2d 583 (1959), as follows:
 When a family burial plot is established, it creates an easement against the fee, and while the naked legal title will pass, it passes subject to the easement created. The easement is in favor of the person creating or establishing the burial plot and the right inherent in such person descends to his heirs. The easement and rights created thereunder survive until the plot is abandoned either by the person establishing the plot or his heirs, or by removal of the bodies by the person granted statutory authority. [Citations omitted.]
We reaffirm that the above-quoted paragraph from Heiligman is a correct statement of Alabama law.
In Aldridge, supra, a one-acre family cemetery had been reserved in a deed dated 1911. A small portion of the acre actually contained gravesites. Defendant Aldridge, whose chain of title nowhere showed any reservation for a cemetery, claimed ownership in the unused portion (approximately two-thirds) of the one-acre cemetery by adverse user. In that case this Court held, based on its construction of Alabama law as expressed inHeiligman, that under the facts presented, an easement in the one-acre tract was reserved and that the easement and rights to the entire one-acre tract created under the 1911 deed survived.
In the case now before us, the cemetery was in existence at the time of the testator's death, and "set apart" in his will. "The owner of the freehold may devote a part of his premises to the burial of his family or friends. It is but a just exercise of his dominion over his own property." Kingsbury v. Flowers,65 Ala. 479 at 485 (1880). We construe the language of the will, that the one acre be "set apart and forever dedicated to the purpose of a family graveyard," as creating an easement in the one acre, which could only be extinguished by abandonment "either by the person establishing the plot or his heirs, or by removal of the bodies by the person granted statutory authority," and not by adverse possession or prescription. Thus, we affirm the trial court on this issue.
 III. Abandonment
Defendants contend that the trial court erroneously granted summary judgment against them. In Ray v. Montgomery,399 So.2d 230 at 232 (Ala. 1980), this Court stated:
 Summary judgment shall be rendered if the pleadings, depositions, interrogatory answers, or affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56 (c), ARCP. The burden of proof is on the movant to establish the absence of any issue of a material fact. Donald v. City National Bank of Dothan, 295 Ala. 320, 329 So.2d 92 (1976).
The scintilla rule of evidence applies in deciding if the movant is entitled to a summary judgment. Campbell v. AlabamaPower Co., 378 So.2d 718 (Ala. 1979).
In pertinent part, Rule 56 (e), A.R.C.P., states:
 When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.
But, this Court has held:
 If there is testimony in his deposition which would contradict the facts as set out in the other testimony, then the failure of the plaintiff to offer counteraffidavits or testimony would be of no consequence since repetition of the same facts in a counteraffidavit would be a useless act. Powell v. United States Steel Corp., 305 F. Supp. 645 (S.D.W.Va. 1969). *Page 935 
Donald v. City National Bank of Dothan, 295 Ala. 320 at 323,329 So.2d 92 at 94 (1976); See also Harold Brown Builders, Inc.v. Jordan Company, 401 So.2d 36 (Ala. 1981).
Defendants claim that the trial court improperly decided questions of fact when it concluded, as a matter of law, that the cemetery had not been abandoned. The trial court based its decision on the definition of abandonment found in Heiligman, and plaintiffs urge that we adopt that definition.
Regarding abandonment, the Oklahoma Supreme Court states:
 [W]e are inclined to follow the states holding that disuse, failure to cut grass or care for the graves and headstones do not constitute abandonment, for the purpose of maintaining the burial plot, but if followed by removal of the bodies therein, such use will be deemed abandoned.
Heiligman v. Chambers, 338 P.2d at 148.
This Court also is inclined to follow the above-quoted rule and adopt it for the purposes of Alabama law. However, within the definition there appears to be room for issues of material fact. It is stated in Annot. 75 A.L.R.2d 591 at 598 (1961):
 However, it has been pointed out that even in jurisdictions which recognize the general rule that a cemetery is not abandoned as long as there are bodies there, if interments have not been made for a long time, and cannot be made, and in addition the public and those interested in its use have failed to keep and preserve it as a burial place, and have permitted it to be thrown out to commons, the graves to be worn away, and the gravestones and monuments destroyed so that the graves have lost their identity, or if it has been so treated or neglected by the public as entirely to lose its identity as a graveyard, and is no longer known, recognized, and respected by the public as such, it may be considered abandoned. [Footnote omitted.]
Although depositions indicate that both parties knew that there was a cemetery, the actual condition of the cemetery, whether the identity of the cemetery had in fact been destroyed, and whether the cemetery was recognizable and known to the general public, appear to be matters going to the question of abandonment. The deposition of plaintiff Nancy Fenn Compton reflects the following:
 A. Well the graves — were recognizable if you knew the graves were there
. . . .
 Q. . . . what made it recognizable to a passerby as a cemetery?
 A. Well, I don't know that anybody that wasn't interested in it would even know. . . .
. . . .
 Q. And you say that the boundaries were defined. Would you tell me how the boundaries. . . .
. . . .
 A. (Interposing) Because of the little knoll. How it had been previously graded off. Now, the square acre was not, no. No boundaries there.
Witness Luke Hutto's deposition contained the following:
 Q. Now, you indicated this particular area seemed to be overgrown and everything sort of a thicket. Is that what it would be?
 A. Well, it was just woods. I mean it was just part of the woods. You couldn't determine it no more than the rest of the woods; but, it was kind of in the edge of the woods so it had a lot more brush and stuff in this regular area than it would be on down in the — I'm saying it is a little thicker because I guess brush and stuff don't grow as well down in the woods where it don't get sunlight. But, anyway, yes, it was thick.
Lee McCall in her deposition was posed, and responded to, this question:
Q. Could you tell that there was a cemetery there?
 A. No, you couldn't tell nothing until you got the brush off of it. *Page 936 
Viewing the evidence in a light most favorable to defendants, we are unable to say that there was not a scintilla of evidence from which a jury might reasonably determine that the cemetery had been abandoned. Therefore, the trial court erred in granting summary judgment in plaintiff's favor.
 IV. Conclusion
For all of the foregoing reasons, we find it necessary to reverse the judgment of the trial court and remand this case for further proceedings not inconsistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
TORBERT, C.J., and FAULKNER and ALMON, JJ., concur.
EMBRY, J., concurs as to parts I II and concurs in the result as to part III.
[1] This section provides the notice requirements to be met by one proceeding under Code 1975, § 11-47-60, et seq., to declare a cemetery abandoned and remove the remains interred in it.